(Decided 26th January, 1883.)

THOMAS S. WICKS *vs.* GEORGE B. WESTCOTT, JR., Assignee of WILLIAM VANNORT.

*Duty of Assignee of Mortgagee or trustee in Selling property, upon which Prior incumbrances rest—Sale by Assignee of Mortgagee under Power in mortgage—Duty of Assignee in respect to Sale—What required in respect of Statements made by Trustee at Sale—Misleading announcement by Trustee at Sale—What required of Trustee in making Announcement*

Wicks *vs.* Westcott.

*at the Sale—Absence of Trustee from Sale—Act of 1825, ch. 117, (Art. 5, sec. 12, of the Code)—Art. 5, sec. 27, of the Code—Act of 1861, ch. 33.*

As a general rule, it is not the duty of the assignee or trustee in selling property, upon which prior incumbrances rest, to ferret out the exact state of such liens, and ascertain how much, if any, may be due upon them. The rule of *caveat emptor* excludes such rigid exaction of a trustee. If the liens are very numerous or complicated, and the title clouded so that it may be doubtful if any valuable interest is to be sold, a creditor might file a bill for the purpose of removing the cloud, and having the property sold by decree, and the proceeds of sale marshalled; but such duty would not rest on the trustee.

Certain property, was sold under a power of sale in a mortgage, by the assignee of the mortgagee. The mortgaged property was subject to the payment of an annual rent. At the time of the sale, it was stated " that the rent charge being a prior lien to the mortgage, the property would be sold subject to the payment by the purchaser of so much of the rent in arrear as might ultimately be shown to be unpaid, and subject to the payment of four hundred dollars per annum during the lifetime of W.," the annuitant. Exceptions were taken to the sale by a judgment creditor of the mortgagor. They substantially charged that the trustee offered the property subject to the accumulated arrears of the annuity or rent charge due W., without accurately indicating what was due on account of such arrears; so that the exceptant and others could not intelligently bid for the property; and that the trustee stated a sum as the possible amount of such arrears without stating that a certain judgment and mortgage were given on account thereof, whereas notice was given of such judgment and mortgage as if they were independent liens, when in fact they were additional security for the arrears of the rent charge; also, that the trustee in making the computation of what was probably due on the rent charge, included interest thereon, when such arrears did not draw interest at all; and that including the interest, the amount of arrears due would fall far short of the amount stated by the trustee as the amount subject to which purchasers would take. HELD:

1st. That the mortgagee, with power of sale to him or his assignee, or the assignee in making the sale under such mortgage, was but a trustee for all the parties in interest—his position being a volun-

tary assumed relation of trustee—and he was subject to the same rules of duty that belonged to other trustees.

2nd. That if it were not the duty of the trustee to have ascertained the amount of the accumulated arrears of rent, and to have so announced, he was bound, if he undertook to make any statement respecting it, to see that such statement was at least, approximately accurate, and in nowise misleading.

3rd. That the announcement made by authority of the assignee, that if the arrearages of rent exceeded four thousand dollars, the purchaser would not be held to his bid, but up to that amount he would be, was clearly misleading, as the bidders might fairly infer therefrom, that in bidding they were liable to pay, and would probably have to pay, in addition to their bid, the sum of four thousand dollars, or nearly that amount for such arrearages, when the proof showed that they did not nearly reach four thousand dollars.

4th. That it was the duty of the trustee when he announced the existence of the judgment and mortgage, to have stated that they were on account of the arrears of the rent, and not independent or additional liens upon the property, as the bidders were entitled to all the information which he had on the subject, and this was most important to them; and further, the unexplained statement of the fact of such liens was calculated to depress the sale.

The fact that a trustee was not actually present when the property was sold, though he was in town, near at hand, and easily accessible, if needed for any purpose, is a circumstance that may be considered with others, of which an exceptant to the sale had a right to complain, as throwing discredit on the sale.

The Act of 1825, ch. 117, (Art. 5, sec. 12, of the Code,) which prohibits the parties from urging in the Court of Appeals any point or question which does not appear by the record to have been raised or decided in the Court below, applies to cases at law, and not to cases in equity.

Section 27, of Article 5, of the Code, applies only to defendants in a regular chancery proceeding, who, having been brought in, and submitted to the jurisdiction without question, will not be permitted to question the jurisdiction on appeal.

The Act of 1861, ch. 33, interposes no obstacle to the consideration in the Court of Appeals, of an objection to a sale on the ground of the absence of the trustee when the property was sold, it appear-

ing that no such objection was made by exception filed in the Court from which the appeal was taken. The consideration of such objection does not fall within the prohibitions of the Act.

APPEAL from the Circuit Court for Kent County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued by agreement before MILLER, ALVEY, and IRVING, J., and STONE, and RITCHIE, J., participated in the decision.

*James A. Pearce,* and *Henry C. Kennard,* for the appellant.

*Charles T. Westcott,* and *John B. Brown,* for the appellee.

IRVING, J., delivered the opinion of the Court.

Upon the fourth day of September, 1878, Joseph J. Webb and wife executed a mortgage, to one William Vannort, for two farms in Kent County, Maryland, to secure the payment of eight thousand four hundred and fourteen dollars and thirty-two cents, which was evidenced by an obligation under seal, payable twelve months after date. On the second of October, 1880, William Vannort assigned the debt and mortgage to George B. Westcott, Jr., the appellee. There was a power in the mortgage that in default of performing any condition of the mortgage, "the said William Vannort, his heirs, executors, administrators and assigns, are authorized and empowered at any time thereafter, to sell the said mortgaged premises." Default having been made, and the power having devolved upon the assignee, George B. Westcott, Jr., he did, on the ninth of November, 1880, sell the mortgaged property at

18                    v. 59.

public sale, after due advertisement of the sale. He reported the sale to the Court; exceptions were filed by the appellant, a judgment creditor of the said Joseph J. Webb, which having been overruled, and the sale having been ratified by the Court, this appeal has been taken.

It appears, that on the second day of June, 1872, Asenath E. Webb, widow of Joseph W. Webb, of Kent County, executed a release of dower in the lands of her husband, to her son Joseph J. Webb, reserving an annual rent from the farms already mentioned, of four hundred dollars, from and after the fourth day of January, 1872. The deed reserved the right of distress, and also the right of renting in case of default in the payment of this rent.

The trustee's report states, that being unable to find out how much of this rent charge was in arrear, just before the sale, it was distinctly stated "that the rent charge being a prior lien to the mortgage, the property would be sold subject to the payment by the purchaser of so much of the rent in arrear as might ultimately be shown to be unpaid, and subject to the payment of four hundred dollars per annum, during the life-time of Mrs. Webb." The report states that the farms were bought by William T. Hepbron and Frank H. Harper, the home farm for sixty-five hundred dollars, and the Pond farm for forty-six hundred and twenty-five dollars.

The exceptions, which are seven in number, are all directed to the manner in which the property was offered by the trustee. Substantially they charge that the trustee offered the property subject to the accumulated arrears of the annuity or rent charge due Mrs. Webb, without accurately indicating what was due on account of such arrears; so that the exceptant and other bidders were bidding in the dark, and in such uncertainty, that they could not intelligently bid for the property; and because the trustee stated a sum as the possible amount of such arrears, without stating that a certain judgment and mortgage were given

on account thereof, whereas notice was given of such judgment and mortgage, as if they were independent liens, when in fact they were additional security for the arrears of rent charge. There was also an exception to the effect, that the trustee, in making the computation of what was probably due on the rent charge, included interest thereon, whereas the exceptant contends, that such arrears do not draw interest from the time of falling due, or at all; and that including the interest, the amount of arrears due would fall far short of the amount stated by the trustee as the amount subject to which purchasers would take.

Testimony was taken, and when the case came up for a hearing, the learned Judge in his opinion stated that it was the duty of the trustee to so offer the property as would invite fair and open competition; and that it was the duty of the trustee to have ascertained the precise amount due for arrears of annuity or rent charge, which was so easily obtainable by him; and that it was his duty to have given notice, that the judgment and mortgage were additional security for such arrears, so that bidders might form some intelligent judgment respecting what they would have probably to pay, and how far the securities would be available to the payment of the arrears; and this not having been done, he would be compelled to set aside the sale, if it did not appear that there was some doubt whether the property had not brought its fair market value, which was the gist of the whole matter; and therefore he remanded the case for further testimony. In ordering further testimony the Judge says, "what I want to know is, in the first place, the precise sum due as arrearages, and then assuming this sum to be due, whether the property sold for its market value, not however, what a judgment creditor behind the mortgage, might bid; but what a purchaser would bid without regard to protecting a claim, that is to say, the market value of the property."

A mass of testimony was taken touching the market value of the property, and the case again came up for final

hearing. The Court said the proof was very conflicting, and did not satisfy the judicial mind that the property had sold at a depreciated price; but on the contrary, considering the weight of testimony was in favor of the property having brought its fair market value, the sale was ratified.

Inasmuch as the Court had found affirmatively that the trustee did not do his whole duty in the premises, and that the representations respecting the possible amount of incumbrances on the property by reason of the arrearages of annuity due Mrs. Webb, had been made by the trustee's agents or attorneys at the sale, calculated to prejudice the sale; and the assignee or trustee was not personally present directing the sale, and exercising his judgment in respect to the circumstances connected with it, which aggregated facts discredited it; there should be no intendment in its favor. Ordinarily, the presumptions are that the trustee did his whole duty, and that a sale made at public auction, after due notice, has brought the best price; but when facts are found to exist, calculated to prejudice the sale, the presumption is against the sale. In such cases a Court of equity will sometimes ratify a sale, when strict conformity to requirements has not been observed in making it, but such ratification will not be accorded unless it appears from the proof, that the sale is an advantageous one, and ought to be ratified notwithstanding the infirmity in the methods of proceeding. In such case the Court will infer depreciated price from much lighter evidence than would otherwise be required. The method adopted in this case of bringing the property under the hammer, was so especially calculated to dampen the sale and decrease the price the sale might otherwise realize, we think the proper course for the Court was to set the sale aside, without remanding the commission for any further testimony. Nor do we regard the testimony, procured on the remand, sufficient to sustain the Court in upholding the sale and ratifying it under the circumstances.

Wicks *vs.* Westcott.

The mortgagee, with power of sale to him or his assignee, or the assignee in making the sale under such mortgage, is, as was said by the Judge below, but a trustee for all the parties in interest. His power is coupled with an interest, but his position is nevertheless a voluntarily assumed relation of trustee, and he is subject to the same rules of duty which belong to other trustees. It was no doubt his duty as was decided by the Court below, so to bring the property under the hammer as to invite fair and open competition. He should have exercised that prudence which would be expected of a prudent man in making sale of his own property, in order that the property may sell for all that it will. *Chappell's Case,* 42 *Md.,* 166.

As a general rule, we do not think it is the duty of the assignee or trustee, in selling property, upon which prior incumbrances rest, to ferret out the exact state of such liens, and ascertain how much, if any, may be due upon them. The rule of *caveat emptor* excludes such rigid exaction of a trustee. If the liens are very numerous, or complicated, and the title clouded, so that it may be doubtful if any valuable interest is to be sold, a creditor might file a bill for the purpose of removing the cloud, and having the property sold by decree and the proceeds of sale marshalled; but such duty would not rest on the trustee. Looking at the peculiar character of this lien on account of accumulated arrears of rent, the Court below thought it was the trustee's duty to have ascertained, as information was easily accessible, what was due and to have so announced. This may not have been his duty; but if he was not bound to inquire or make any statement respecting the amount of arrears, the trustee was bound, if he undertook to make any statement respecting it, to be sure that the statement he did make was, at least, approximately accurate, and not in anywise misleading. Information was given, by public announcement, that the prop-

erty would be sold subject to Mrs. Webb's rent charge or annuity of $400, and the arrearages of rent, which might. reach four thousand dollars. If it exceeded four thousand dollars, the purchaser would not be held to his bid, but up to that amount he would be. From this public statement. all bidders might fairly infer, that in bidding they were liable to pay, and probably would have to pay, in addition to their bid, the sum of four thousand dollars or nearly that amount, for arrearages of the annuity. The proof' showed and the Court found, that the arrearages did *not* nearly reach four thousand dollars, but fell short of it,. according to the Court's computation, about thirteen hundred dollars. The statement made by the authority of' the assignee was therefore clearly misleading. Upon.that. basis, it is clear the appellant could have advanced his bid five hundred dollars, and then the property would have cost him a little less than if it had been struck off to him. at his bid.

On the 20th of January, 1879, Joseph J. Webb, confessed a judgment for $2,682.91, to Mrs. Webb, the annui-- tant, for the amount of arrearages due from him at that date. In the same year, he executed a bill of sale of certain personal property, to secure the sum of thirty-five hundred dollars alleged to be due. The trustee states. in his report of sale, that he gave notice of this judgment and bill of sale, and stated that they were in security for these arrears of rent; but in his answer to the exceptions. to the sale, he admits he only stated the existence of the judgment and bill of sale *without further comment;* and the Court below found as a matter of fact, that he did not give notice that they were on account of arrears, and not independent or additional liens. Manifestly the bidders. were entitled to all the information on the subject which he had, and when he gave notice of that judgment and. mortgage, he ought to have stated all he knew about them. It was most important information to bidders, and how

far that information, which would have helped bidders to
form some better idea as to the sum they would have to
pay in addition to what was bid, might have operated to
induce more competition, it is impossible to tell. The un-
explained statement of the fact of such liens was calculated
to depress the sale.

The rule is certainly well established, that a trust com-
mitted to the judgment and discretion of one person can-
not by him be delegated to another. It having been
proved that this trustee was not personally present at the
sale, but was acting through agents or attorneys, it is in-
sisted that the power was not well executed, and that
there was no sale to which an order of ratification by the
Court could give validity. We do not regard that ques-
tion as involved upon the facts. In *Hubbard vs. Jarrell,*
23 *Md.,* 66, this Court decided that a trustee who was
present could act through an attorney or agent. We can-
not say that this trustee, who, though not actually at the
sale when it was made, was in town, near at hand and
readily accessible if needed for any purpose, may not be
regarded as constructively present. But as a circumstance
with others of which the exceptant had a right to complain,
it may be considered. This Court, in the case of *Walker
and Wife vs. Tims and Wife,* a case to be found in the list of
"Cases Unreported," in 39 *Md.,* decided that the personal
absence of the trustee from the sale, and making it through
another, was a fact which threw discredit on the sale, and
with other facts, in *justice* required a new sale to be or-
dered. No special exception was taken in this case, as
was done in that case, on that score, but the rule invoked
by the appellee's counsel that we cannot take notice of it
in this Court because it was not taken by exception below,
has no application. The Act of 1825, ch. 117, (Code,
Art. 5, sec. 12,) does not embrace this case. That Act
applies only to law cases and not to equity causes. Section
27 of Article 5 of the Code does not meet the case, for

that section is applicable only to defendants in a regular chancery proceeding, who, having been brought in and submitted to the jurisdiction without question, will not be permitted to question the jurisdiction on appeal. The Act of 1861, chapter 33, interposes no obstacle to its being considered, because it does not fall within the prohibitions of that Act. It only applies to questions respecting "the competency of witnesses, or admissibility of evidence, or the sufficiency of the averments of a bill or petition, or to any *account stated and reported* in the said cause." Evidently the statute does not embrace and does not contemplate a case of this kind. Certainly no one can be taken by surprise when the fact was proved before the Court below, and the Court adverts to it in the first opinion which was filed.

The purchasers of the farms were Frank H. Harper and William T. Hepbron, both sons-in-law of Mrs. Webb, the annuitant, and brothers-in-law of the mortgagor. From the proof taken in the cause, it would seem that they and the appellant were the only bidders for the property. There were other bidders, but they appear to have been bidding at the instance of and on account of Harper and Hepbron. Because of the relationship of those gentlemen to the debtor and the annuitant, it is evident they occupied vantage ground over and above all other creditors or bidders. They enjoyed the opportunity and facilities for knowing accurately how the account stood between the annuitant and her son, whose property was being sold. They may almost certainly be supposed to have known what was due, and what they would have to pay, if they purchased, in addition to their bid. If nothing had been said by the trustee respecting the arrears and the amount unpaid, subject to which a purchaser would buy, their supposed knowledge, from special opportunities to get information, would not be an element, perhaps, for consideration; but, as certain representations were made, we think

it is an element; and also the fact that other bidders did not have the benefit of their supposed knowledge by bids on their own behalf. Others were bidding for them without its being so understood. Competition, if possible, should always be·on fair and equal ground among bidders having equal knowledge or means of knowledge, "or means of knowing precisely what they are buying and what purchase money they will have to pay." *McLaughlin's Case,* 31 *Md.,* 450. This privilege, we think, was not enjoyed by all bidders in this case, but at a new sale may be secured to them. The circumstances surrounding this sale are of such a character as to make it so probable that the property did not bring all it might have brought, if properly offered, that we think the proof respecting the market value of the property insufficient to overcome the fair presumptions against the sale which all the circumstances create. In fact, the witnesses differ so widely in their estimates of value, and the opinions proceed from so many different persons, it seems to us very clear that at that period the property in question had no such well-ascertained or fixed market value to be a safe guide to the Court in determining this controversy. The proof certainly does not establish that the property has not sold for less than it ought, or will not sell for more at another sale. To justify the ratification, under all the circumstances of this case, we think the Court ought to be satisfied that the sale is as good as can be effected under different offering. The farms have sold for full market value in the opinion of many, but there are also a number who think otherwise, and regard the property as worth much more than it brought. If, therefore, there be reasons which would tend to advance the sale, the creditors are entitled to have the property bring all that it will. And if a creditor, situated as this exceptant, is willing to give more than any one else is, he and the other creditors are entitled to have him buy. He will have to respond with the cash or security, as any

other bidder.    The fact that a person is a creditor-bidder, whose bid in excess of the claim under which property may be sold, would all go to himself, and not have to be actually paid, might very properly go to the *value* of such person's testimony, that he would give a particular sum for the property, where the inquiry is one of market value. It is true that this exceptant is a judgment creditor, but he is one of several of the same date, and his claim is only about one-fifth of the aggregate amount of equal date with him.    Four-fifths of his bid in excess of the amount necessary to pay the claim and costs for which the property is sold, would have to be paid and go to other creditors. His testimony, therefore, is of very material value as to the worth of the property.    It is true he does not say in so many words that he will advance his bid upon a new offer of the property, but he says "he presumes he will," which is equivalent to saying such is his present purpose, and is, perhaps, as positive as one should be forced to speak.

What we have said disposes of all the questions which are properly before us, and for the reasons we have assigned, we shall reverse the order ratifying the sale, set the sale aside, and remand the cause, that the property may be again offered.

> *Order reversed, sale set aside,*
> *and cause remanded.*

(Decided 31st January, 1883.)