HABIB, ET UX. *v.* MITCHELL AND BERN-
STEIN, TRUSTEES

[No. 146, September Term, 1969.]

*Decided February 13, 1970.*

30

The cause was argued before Hammond, C. J., and McWilliams, Finan, Singley and Digges, JJ.

*Kurt Berlin,* with whom was *Frank Smith* on the brief, for appellants.

*Thomas B. Yewell* for appellees.

Finan, J., delivered the opinion of the Court.

This case is before us on appeal from a decision of the Circuit Court for Prince George's County which denied appellants' motion for a continuance and their exceptions to a foreclosure sale. In December, 1965, the Republic Savings and Loan Association (Republic) contacted Mr. Habib, appellant, as to the feasibility of his acquiring a mortgage on certain land as to which Republic was the mortgagee. In July, 1965, a financial arrangement was agreed upon by Habib and Republic. He acquired title to the property and executed a deed of trust note which evidenced an obligation of $85,000 on which he was to pay 6% interest. The note further provided that the en-

tire principal balance would be due and payable on August 15, 1968. The appellant claims he did not notice this latter provision.

As the August 15th date approached, Habib realized he could not make the payments. He contends that an officer of Republic orally guaranteed him an extension of the due date for three years. No consideration was given for this supposed extension.

On July 1, 1968, Republic was absorbed by Home Federal Savings and Loan Association (Home) who transferred the Habib mortgage to Federal Savings and Loan Insurance Corporation (Federal). Federal began pressing Habib for payment of the principal. Federal acknowledged that it would honor any extension made by Republic but could find nothing in its records to show that any had been made. It also agreed to extend the time for one year at 7% plus a 1% loan modification fee. This was rejected by appellant.

The foreclosure sale took place on December 30, 1968. Federal, the one and only bidder, bought in the property for $57,850. Subsequent to the sale, appellant's attorney discovered that the foreclosure bond was not officially stamped "approved" until after the sale and that one of the trustees had authorized another to sign the bond for him. Appellant filed exceptions to the sale on February 3, 1969, the last day on which he could do so. A hearing was scheduled for March 31, 1969. Appellant moved for a continuance on March 21, 1969, and this was denied by Judge Bowie on March 24. At the hearing on March 31, the motion for a continuance was renewed but Judge Bowie again denied the motion and finding no merit to the exceptions he ratified the sale.

Appellant has raised four issues on appeal: (1) Did the denial of a continuance violate due process, (2) Was the foreclosure sale illegal because the bond was signed for one of the trustees rather than by the trustee personally, (3) Was the sale illegal because the bond was not stamped as "approved" until after the sale, (4) Was

the foreclosure sale invalid because of alleged inadequacy of price. We shall discuss these issues in order.

Habib contends that his failure to be prepared for the March 31 hearing was not attributable to any fault of his. He points out that depositions taken on March 13 had not yet been transcribed and that the president of Home had not yet reported whether his records showed an agreement for an extension on the loan. However, appellant knew on February 28 that the hearing was scheduled March 31. He also knew that Judge Bowie had denied his original motion for a continuance. With this in mind he should have prepared to present his case on March 31 in the event the court should reject his new motion for a continuance. He had no witnesses available. Furthermore the reason he was not notified that Home officials had found no evidence of an extension was that his attorney was out of town the week preceding the hearing. At the hearing on March 31, there was a representative of the noteholder present who was prepared to testify that no evidence of an extension existed. He could have been cross-examined but was not. Appellant had the essential elements of his case on December 30, 1968, yet he did not file suit until February 3, 1969. We think the cumulative effect of these factors was sufficient to justify the trial court's conclusion that the appellant was lax in preparing his case.

The second issue concerns the failure of one of the trustees to sign the foreclosure bond personally. The evidence indicates that the trustee was ill and asked a long standing business associate of his to sign on his behalf. Appellant contends that such authorization must be in writing and be duly recorded. For this proposition he cites Article 21, section 23 of the Maryland Code. However, this section deals with the conveyancing of real estate under a power of attorney. It has no application to foreclosure bonds. Furthermore, Article 21, section 26, provides in pertinent part, "Every bond, * * * relating to real estate * * * *may be* executed, acknowledged and recorded in the same manner as deeds to real estate

* * *" but it does not make it mandatory that they be executed, acknowledged and recorded in the same manner as a deed to real estate.

We think the question thus resolves itself into one of trust law, *i.e.*, could the trustee so authorize an agent to execute such a bond. The usual standard by which a trustee is allowed to delegate authority is based upon the amount of discretion the agent will have to exercise. See Scott, *Law of Trusts*, Vol. II, section 171.2. In this case the agent exercised no discretion. He was told to sign the bond and his doing so was merely the performance of a perfunctory act. Thus the bond as executed was valid.

We think that the practical aspect of this issue is that the bond was actually executed in person by one of the co-trustees and the corporate surety has not raised any question concerning the validity of the bond. Accordingly, we fail to see any legal significance in the challenge raised by the appellant to its validity.

The third point raised by appellant is that the foreclosure bond was not approved until after the sale had been completed. Appellant bases this contention on the fact that the clerk did not stamp the bond "Filed and Approved" until after the sale although the clerk had received and inspected it before the sale took place. Rule W74 of the Maryland Rules of Procedure provides that before making a sale of mortgaged property a bond must be filed and approved pursuant to Rule H2. Rule H2 provides: "(a) A bond shall be filed with and recorded by the clerk, (b) (1) All bonds may be approved by the clerk as to amount, form and surety." The reason the bond was not stamped when received was that the office was short of help. Testimony revealed that it was quite frequently the practice of the clerk's office to examine the papers, place them in files, but not to stamp them until the end of the day. Judge Bowie concluded that this was what occurred in the case at bar. We think that under these circumstances the bond was filed and approved when accepted by the clerk and not when the mere stamp-

ing took place. To find otherwise would be to exalt form over substance.

The last issue raised by appellant challenges the validity of the sale because it is alleged that the price paid by the mortgagee was so inadequate as to shock the conscience of the court. Evidence revealed that the mortgagee had obtained two appraisals on the property. One was for $100,800; the other for $57,850. The mortgagee started the bidding at and obtained the property for the latter figure. Appellant contends that the disparity in appraisal figures and the fact that it was the mortgagee who purchased the property are factors which when combined should invalidate the sale.

In general a mere allegation that a purchase price is inadequate will not be enough to invalidate a foreclosure sale. *Ed Jacobsen, Jr., Inc. v. Chapline*, 253 Md. 70, 73, 251 A. 2d 604 (1969); *Butler v. Daum*, 245 Md. 447, 452, 226 A. 2d 261 (1967); *Ten Hills Co. v. Ten Hills Corp.*, 176 Md. 444, 454, 455, 5 A. 2d 830 (1939). However when a mortgagee purchases at such a sale the courts will pay special attention to see that he has acted in good faith. *Heighe v. Evans*, 164 Md. 259, 269, 270, 164 A. 671 (1933). The fact that the mortgagee is watched closely does not require him to act inimically to his own interests. There is no evidence that the sale was not properly advertised or that bidding was discouraged. There is no evidence that the sale was attended by any fraud. Good faith does not require him to pay the higher of the two appraisals. In our opinion the chancellor did not abuse his discretion in ratifying the sale.

> *Decree affirmed, appellants to pay costs.*