## SILVER SPRING DEVELOPMENT CORPORATION *v.* GUERTLER, TRUSTEE, ET AL.

[No. 308, September Term, 1969.]

*Decided March 9, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Peter C. Andresen* for appellant.

*Leonard C. Collins,* with whom was *Robert E. Bullard* on the brief, for C. C. Guertler and William M. McClure, part of appellees; *Edgar A. Wren* and *Lorraine E. Torek* on the brief, for Eugene and Lucie M. Baldi, other appellees.

HAMMOND, C. J., delivered the opinion of the Court.

An intensity of frustration and bitterness that leads to a grasping at legal straws often presents itself in efforts to prevent or set aside a foreclosure; this appeal is an example.

The land involved is in the Colesville area of Montgomery County. Part is zoned general commercial and part one-family detached restricted residential. In 1965 the owner borrowed $314,000 for two years on the security of the land on an appraisal of $628,000. A one-year

extension was obtained in 1967. The loan was not paid
and the bank foreclosed, selling the property for $338,-
000, some two-thirds of two current experts' appraisals.
Twenty exceptions to the ratification, many inconsequen-
tial if not indeed frivolous, were timely filed. Judge Moor-
man lists and disposes of all of them in a sound and suc-
cinct opinion, which we adopt, as follows:

"William C. Baylies, President of Silver Spring De-
velopment Corporation, brings this action, excepting to
the foreclosure sale on October 30, 1968 of mortgaged
property known as 'William E. Richardson's addition to
Northwest Branch Estates.'

"On September 13, 1965, Silver Spring Development
Corporation executed a deed of trust to C. C. Guertler
and William M. McClure, as trustees, as security to Se-
curity Bank for money loaned in the amount of Three
Hundred Fourteen Thousand Dollars ($314,000). This
deed of trust is filed among the land records of Mont-
gomery County in Liber 3414, Folio 279. In September
1967 the loan not being paid according to the terms in
the deed of trust, 'Payable to the order of the said Se-
curity Bank, a West Virginia corporation, on or before
two years after date,' Mr. Eugene F. Baldi, Treasurer of
Silver Spring Development Corporation, entered into a
one year extension agreement, Exceptor's Exhibit 5, with
the Security Bank.

"In September 1968 the loan again coming due, the
Security Bank wrote a letter dated September 10, 1968,
to Mr. Baylies, Exceptor's Exhibit 1, informing him the
loan was due on September 13, and that the correspon-
dent bank who furnished $250,000 of the funds loaned
would not grant another extension, but that there was a
tentative commitment from another bank. The letter also
requested Mr. Baylies to notify the bank if he wished to
accept the commitment should it become a firm offer. The
offer was not accepted by Mr. Baylies. On September 13,
1968, the bank notified Mr. Baylies that if payment of
principal of $314,000 and interest of $4710 was not re-
ceived by September 16, 1968, the deed of trust would

be delivered to their attorneys for foreclosure. (Exceptant's Ex 2).

"No payment being made by September 17, 1968, Leonard C. Collins, attorney for the bank and Trustees, wrote a letter to the Silver Spring Development Corporation, stating the deed of trust was forwarded to him for foreclosure and should payment not be made by the following Monday (September 23, 1968) he would proceed with foreclosure. Subsequently, letters marked defendant's exhibits 3, 6, 8, 9, 10, 11, 13, 14, and 16 passed between Mr. Baylies, the bank and the Trustees. In each letter Mr. Baylies made reference to the possible sale of the properties and requested the bank to stay the notice and foreclosure until the land could be sold. However, Mr. Baylies never gave the names of any prospective purchaser nor would he inform the bank, the trustees or their attorney of any information pertaining to the prospective purchasers.

"The foreclosure was advertised in the Montgomery County Sentinel on October 10, 17, and 24 with the sale held on October 30, 1968 at 9:34 a.m. on the courthouse steps. Attorney Collins, the attorney for the trustees cried the auction. Mr. Frank A. Gunther, President of Security Bank, and Mr. Baldi, Treasurer of the Silver Spring Development Corporation, were the only bidders. Mr. Baldi bid $350,000, withdrew it and re-bid $338,000. The auctioneer accepted it. At the sale, Mr. Baldi gave a $25,000 check. Later that same day he replaced the check with a $25,000 cashier's check.

"Exceptor makes the following exceptions to the sale.

1) Attorney for trustees failed to certify on his initial pleading that he was a member of the Maryland Bar (Local Rule 5),

2) Amount of Bond is insufficient and no subsequent bond has been filed,

3) The purchasers were reported as Eugene Baldi and Lucie M. Baldi, but the affidavit required under Rule BR 6 b3 was not complied with in that it was affirmed only by Eugene Baldi,

4) One trustee, Mr. William M. McClure was not present at the sale, therefore, he is not in a position to report the sale under Rule BR 6 [a],

5) Adequate notice under Rule W74 a 2 was not given,

6) The sale began at 9:34 a.m. instead of stated time of 9:30 a.m.,

7) The advertisement of the sale failed to mention that the land was on U. S. Route 29, and that 2 large national concerns were negotiating for its purchase,

8) No licensed auctioneer was present at the sale,

9) The terms of sale did not call for a forfeiture of deposit in event of default by the purchaser,

10) The attorney for the trustee acting as auctioneer refused to answer questions as to terms, manner, mode and conduct of sale,

11) The auctioneer reduced Mr. Baldi's bid from $350,000 to $338,000,

12) The terms of sale required a $25,000 certified check by the successful bidder. However, Mr. Baldi did not give any deposit and when Mr. Baylies asked the attorney—the auctioneer to see the deposit the auctioneer said, 'I'm not showing you anything.'

13) The facts of #12 were so prejudicial to Mortgagor that the sale should be vitiated,

14) The sale price was grossly inadequate,

15) The trustees had been advised of negotiations with 2 large national concerns for a sale of part of the property for more than the mortgage debt. Therefore, it was their duty to divide the property for sale at the foreclosure sale,

16) The loan had been extended in 1967 without Mr. Baylies' knowledge, therefore, the bank is estopped (equitable estoppel) from foreclosing,

17) The purchaser at the foreclosure sale, Mr. Baldi, was treasurer of the corporate mortgagor, in fact, owned 50% of its stock, and had a close working relationship with the mortgagee. Therefore, because of his self-interest and this relationship Baldi was an improper purchaser,

18) The trustees failed to act with the degree of care, diligence and judgment required,

19) Purchaser failed to post the deposit required by the terms of sale,

20) A common scheme existed, a conspiracy, between the mortgagee bank and purchaser with the intent to defraud the mortgagee of the land.

"The exceptor seeks to have the court: 1) set aside the foreclosure sale; 2) order trustee and/or mortgagee to allow mortgagor a one year extension on the note secured by the deed of trust.

"*Exception 1* lacks sufficient basis as Mr. Leonard C. Collins has signed the Montgomery County Attorneys' Test Book at page 21.

"*Exception 2* lacks merit as sufficient bond has been filed, $330,000 on October 11, 1968, and an additional $10,000 on November 6, 1968, reported sale price being $338,000.

"*Exception 3* the alleged violation of Rule BR 6 b3 has no grounds as the purchaser-affiant does state in the affidavit that he purchased the land and with whom he purchased it. The statute does not require both to sign the affidavit, but rather that all purchasers be disclosed.

"*Exception 4* has no merit. There were two trustees appointed but only one need be present at the sale and to make the report.

"*Exception 5* has no merit because the exact provisions of Rule W 74 a 2 were complied with.

"*Exceptions 6, 7, 8, 9, 12, 13* are found to lack any merit.

"*Exception 10,* the Court finds that evidence to the contrary was shown. The auctioneer did answer questions regarding the sale and its terms, but when the questions continued he rightly decided to proceed with the sale.

"*Exception 11*—The evidence reflects that a bid of $350,-000 was made, but that it was withdrawn, in fact after the $338,000 bid was made the auctioneer cried that amount and specifically asked Mr. Baylies if he wished to

increase the bid. Not receiving a higher bid the $338,000 sales price was announced.

"*Exception 14*—The Court finds that $338,000 is an acceptable price for the land. Exceptor's own witness stated $497,000 was an appraisal value. The price received was 68% of that amount. In cases where the question of inadequacy of price is questioned in a forced sale,

> '* * * unless the disparity between the valuation of the property and the price obtained for it is such as to shock the conscience of the court, the sale will not be set aside for mere inadequacy of price.' *deTamble v. Adkins,* 210 Md. [414] 422.

"This case was cited with approval in *Brooks v. Bast,* 242 Md. 350 [357-358], * * *.

"*Exception 15* — The only evidence produced to show that the trustees had any knowledge that the land could have or should have been divided was the statement of Mr. Baylies that two national concerns were interested in purchasing the land. There was no evidence of any subdivision actually in course of development that would have required the trustees to subdivide the land before sale. The Court in *deTamble* [quoting] *Hopper v. Hopper,* 79 Md. 400, said at page 424 of *deTamble,* 'Whether it is advisable to sell land by the acre, or in building lots, depends largely upon the location of the property, and the surrounding circumstances.'

"*Exception 16* lacks merit as the loan was extended in 1967 by the Treasurer of the Silver Spring Development Corporation and the bank. The basic laws of agency state that the act of an agent or officer of a corporation is the act of the corporation itself and that the corporation is placed on notice of all acts done by its officers and agents in furtherance of its affairs. Therefore, Mr. Baylies, as president of the corporation is imputed to have knowledge of the mortgage continuation and is now barred from raising lack of knowledge or equitable estoppel.

*"Exception 17*—Any person is qualified to purchase at a foreclosure as long as it does not interfere with any duty he has to perform with respect to the foreclosure. Mr. Baldi, as treasurer of Silver Spring Development Corporation had no duty to perform regarding the foreclosure; therefore, he was a proper purchaser.

*"Exception 18*—The Court could not find a milligram of evidence to show that the trustees failed to act with diligence or use the proper judgment required.

*"Exception 19*—The evidence indicates that the president of Security Bank was present at the sale and advised the attorney acting as auctioneer that it would be all right to accept the uncertified check for $25,000. The Court finds no [prejudicial] failure to comply with the terms of sale. [*See Wilson v. Cory*, 228 Md. 561.]

*"Exception 20*—a conspiracy is a combination, or an agreement between two or more persons, for accomplishing an unlawful end or a lawful end by unlawful means. There was no evidence adduced during the trial of any relationship or agreement between Mr. Baldi, Treasurer of Silver Spring Development Corporation, and officers of Security Bank of any agreement or plan to divest Mr. Baylies of his property.

"For the reasons given herein, it is this 11th day of July, 1969, ORDERED that the bill of exceptions to the foreclosure sale, be, and it is hereby dismissed and the relief prayed for is. denied. An order ratifying the sale will be signed."

Appellant has another complaint which was not listed among the exceptions to ratification. It says it had an absolute right to have granted its motion for a Rule for Security for Costs since the foreclosing creditor was and is a non-resident bank. Suit was docketed on October 11, 1968, the sale was made on October 30, and the report of sale was filed on November 6. On December 9 appellant filed both its exceptions to the sale and its motion as to security for costs. Judge Moore preliminarily set both the exceptions and the motion for hearing on the

same day. Appellant did not object. Judge Moorman, who heard the case, said he would reserve his ruling on the motion and hear the exceptions. Appellant again did not object, and made no further reference whatever to its motion until its brief was filed in this Court.

Maryland Rule 328 a provides that:

> "The defendant shall be entitled, upon motion made before the case is at issue or ready for trial, to have, as of right, a rule laid on the plaintiff to give security for the payment of such costs and charges as may be recovered against him if the plaintiff is not a resident of this State at the time the motion is made."

The next paragraph of the Rule provides:

> "If the motion is made after the case is at issue or ready for trial, it shall be granted only in the discretion of the court, which may pass such order as justice may require as to continuances, * * *."

In *Hartford Acc. & Indem. Co. v. State, Use of Ritter*, 201 Md. 433, 444-445, in dealing with the statute which preceded the Rule, we said:

> "The appellant filed a motion in this Court that the appellees as non-residents be required 'to provide security for costs.' It alleged that in the Court below, it made such a motion at the beginning of the trial and that its motion was denied on the ground that it came too late. Since we hold that the Court below committed no error and that the judgment must be affirmed, the appellant is not injured by the refusal of the Court to grant the rule. Under Sec. 9 of Art. 24, Code of 1951, the defendant in any action may at or before the Trial Court 'have a rule on the plaintiff to give security for costs.' The defendant will have the right at any time

before the trial begins to apply for and obtain such a rule. The Court has no discretion. *Haney v. Marshall,* 9 Md. 194; *Poe, Pleading and Practice,* Tiff. Ed. Vol. 2, sec. 78. However, a close scrutiny of the record in this case indicates that the defendant did not make an unqualified demand for the application of the rule. Its counsel pointed out to the Court that the Statute authorized the motion at any time prior to trial. When the Court in turn pointed out that the provisions of Sec. 9 of Art. 24, Code of 1951, give 'until the second day of the next term of the Court' to comply, the defendant said it did not want a postponement and moved to dismiss unless the security were posted immediately. This motion was denied and the defendant went to trial. We think that under these circumstances, the defendant attempted to 'have its cake and eat it, too,' and that it could not insist on the rule being laid unless the plaintiffs were given the statutory period to comply. Having gone to trial, it waived its right. *Spencer v. Trafford,* 42 Md. 1, 18."

If it be assumed that appellant's motion was not too late under Rule 328 a (and no inference that it was timely filed is to be drawn), it seems plain to us that its right to the relief sought was effectively waived and lost under *Hartford, supra,* and *State, Use of Wilson v. McCarty,* 60 Md. 373.

<div align="center">

*Order appealed from affirmed, with costs.*