IRENE J. McCARTNEY *v.* REX A. FROST

[No. 114, September Term, 1977.]

*Decided May 25, 1978.*

The cause was argued before SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Jean S. Spotts* for appellant.

*Alfred L. Brennan,* with whom were *Brennan & Brennan* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

For the second time this year we are involved in a subject on which there has been but little written in the reported opinions of this Court: the matter of a sheriff's sale. *See Lewis v. Rippons,* 282 Md. 155, 383 A. 2d 676 (1978).

We shall here hold that a trial judge erred in failing to set aside a sheriff's sale. Thus, we shall overrule the decision of the Court of Special Appeals in *McCartney v. Frost,* 37 Md. App. 495, 378 A. 2d 170 (1977), although we concur with the opening paragraph of that opinion, in which Judge Powers said for the court, "In law libraries in Maryland little can be found concerning a sale of real estate by a sheriff after levy of a writ of fieri facias on a judgment." We granted the writ of certiorari because of the sparsity of decisions by this Court on the subject.

The facts are fully detailed in the opinion of the Court of Special Appeals. We shall set forth only such facts as are necessary to a clear understanding of the issue presented.

Some years ago appellant, Irene J. McCartney (Mrs. McCartney), and her husband purchased a home in Baltimore County. They have since been divorced. Prior to that divorce they borrowed money from John A. Greene (Greene). He recovered a judgment against them. On December 18, 1975,

Greene directed issuance of the writ of fieri facias to the Sheriff of Baltimore County for the purpose of satisfying that indebtedness. The writ showed that there was due the sum of $3,429 plus interest from July 29, 1971, together with costs, in addition to attorney's fees of $342.90. Pursuant to the writ, the sheriff seized and sold the home of those parties, then occupied by Mrs. McCartney alone.

The sale took place on the premises on April 20, 1976. There were but two bids placed, an opening bid of $1,500 and a second bid by Appellee, Rex A. Frost (Dr. Frost), in the amount of $2,000. He paid for the property, and the sheriff executed a deed to him. On May 10, 1976, Mrs. McCartney moved "to set aside the levy and execution sale made pursuant to the writ of fieri facias in this case." Grounds stated in her motion were that the property sold had "an estimated value of $25,000"; that it "was sold for $2,000, subject to an existing mortgage of approximately $6,000"; and that the sheriff "in conducting said sale, failed to do those things necessary to attract the bidders and promote the bidding, and otherwise failed to act in good faith to procure the highest possible bid, as required by law, thereby resulting in a selling price, which is grossly inadequate and unconscionable."

The matter ultimately came on for hearing. Dr. Frost, the purchaser, was permitted to intervene. At the hearing the court was advised that Greene, the judgment creditor, had counsel in court who authorized counsel for Mrs. McCartney "to inform the Court [that] they, too, [were] in favor of setting the sale aside . . . ." Uncontroverted evidence was adduced that the fair market value of the property in question at the time of sale was $24,000 subject to a $96 ground rent. No specific authority can be found in the record for such a statement, but it appears that all of the parties, the trial court, and the Court of Special Appeals operated upon the hypothesis that the mortgage lien on the property in question is $6,000. There is no evidence and no intimation that there are any other liens. The trial judge observed in the process of the hearing that he could not "disagree [with the contention that the selling price] was grossly inadequate as to the value of the property," adding

that he was "not blind or naive." At another point he said he was "convinced the property was sold for far less than its value. It is a row house, a nice neighborhood. The price that was paid for it by way of the auction is far below the value of this home." He declined to set aside the sale, however. In his opinion he pointed out that "the Purchaser had not been permitted to inspect the interior of the premises"; that one purchasing "at a Sheriff's sale does not have the assurance of clear title that a buyer at a foreclosure sale has," since "the interest sold at a Sheriff's sale is much more likely to be subject to liens and encumbrances"; and that Dr. Frost "was truly buying a 'pig in a bag.'" For those reasons he said he could not "find the purchase price to be 'grossly inadequate.'"

The Court of Special Appeals said:

> "[T]he price certainly appears to be inadequate, perhaps grossly so. But there are other factors. A sheriff in effect sells a quitclaim interest. He gives no assurance of good title. As the auctioneer put it in his testimony, at a sheriff's sale he is selling 'a pig in a bag'. Another factor was present here. Mrs. McCartney, apparently because of advice given to her by a lawyer she consulted, declined to permit inspection of the inside of the house." *Id.* at 499 (footnote omitted).

It held "that there was no breach of duty by the sheriff in the sale of the property in this case," observing that "[t]he inadequate price, standing alone, did not invalidate the sale."

Counsel for judgment creditors desiring to produce the maximum amount possible for their clients — and thus for the person whose land is being executed upon — generally make it their business to examine the land records to ascertain what liens come ahead of the judgment under which they are selling. They then make some effort to verify the sums due. Thus, some information can be provided for prospective bidders. The attitude and circumstances under which the sale here was made were demonstrated in the testimony of the auctioneer who was hired by the sheriff to

cry the sale. The auctioneer said at the hearing on the motion to set the sale aside, in response to a question as to what he told the public at this particular sale:

> "Ladies and gentlemen, I am offering you a home, as it may appear, you are buying a pig in a bag, because I don't know what is against the property, which I have always stated at Sheriff's sales for the fifty-six years. They are buying a pig in the bag. I don't know what is in the house and nobody has been in to see it. I can't tell you. You are buying a pig in the bag. What do I hear?"

On cross-examination he was asked whether the sheriff ever indicated at such a sale how much he should "try for or where to start." He replied:

> "No, they tell me to sell it. They don't say you have to get $2,000.00. You don't have to get $5.00. I have sold it as low as $25.00 at the Courthouse door as true as I sit here. I sold one for a thousand dollars at the Courthouse door that the man bought and could never get the title because they sold something they did not have the title to, so you are buying a pig in a bag. In fifty-six years, I have saw a lot. I am out to get every dollar I can get and nobody can say it, because I am working on commission. The court gives us commission. They set the fees. Every $500.00 we get, we make commission on."

A sheriff's sale is not a "judicial sale," the latter being defined by Maryland Rule BR1 as "a sale of property which is subject to ratification by a court," although the definition specifies that it "does not include sales under Subtitle W (Foreclosure of Mortgages and Other Security Devices) except to the extent specifically provided therein." Rule W74 e provides, however, that the procedure following a foreclosure sale "shall be as provided in Rule BR5 . . . and Rule BR6 . . . ." "The court is the vendor in the case of a sale under the power contained in a mortgage, just as it is a vendor in any other chancery sale." *McCann v. McGinnis,* 257 Md.

499, 505, 263 A. 2d 536 (1970), citing *Warfield v. Dorsey,* 39 Md. 299, 307 (1874).

Relative to a sheriff's sale, D. Rorer, *Judicial and Execution Sales* § 46 (1873), comments:

> "In making ordinary execution sales, simply by virtue of his office, the sheriff or marshal acts as the ministerial officer of the law, not as the organ of the court. He is not its instrument or agent, as in judicial sales, and the court is not the vendor. His authority to sell rests on the law and on the writ, and does not, as in judicial sales, emanate from the court. The functions of the court terminate at the rendition of the judgment, except where confirmation of the sale is the practice. The court does not direct what shall be levied or sold, or how the sale shall be made. The law is the officer's only guide." *Id.* at 25 (footnote omitted).

The same author observes in § 51 at 27, "The officer selling is for that purpose constituted by law the agent and attorney of the execution defendant . . . ." (Footnote omitted.) To like effect *see* W. Murfree, *Law of Sheriffs and Other Ministerial Officers* § 991 at 519 (1884), adding, "The rule of *caveat emptor* applies to all execution sales," citing, among other cases, *Bolgiano v. Cooke,* 19 Md. 375, 391 (1863). In *Preissman v. Crockett,* 194 Md. 51, 56, 69 A. 2d 797 (1949), Judge Grason observed for this Court that at such a sale "only the right, title and interest of the owner or owners of the property seized is sold."

Long ago our predecessors in *Nesbitt v. Dallam,* 7 G. & J. 494, 511 (1836), said, "It is the duty of the sheriff in making a . . . sale, to endeavor to obtain the best price in his power for the property to be sold . . . ." W. Murfree, *op. cit.,* § 996 observes:

> "The law confides in him as the agent of both plaintiff and defendant, and expects that his powers will be so exercised as to promote the interests of all concerned. He has a power to sell, but that does not confer a right to sacrifice property, he is not bound,

acting under a writ of *fieri facias,* to sell without reserve, merely because he has received a bid. If he sees that a sacrifice may be prevented by a little delay, he may refuse to accept a bid, and under such circumstances may safely return that the property was not sold for want of bidders; and if a purchaser fails to comply with his engagement, it is the duty of the officer in the matter of making a re-sale to exercise a reasonable discretion." *Id.* at 526 (footnote omitted).

It is put in a slightly different manner in 2 J. Poe, *Pleading and Practice* § 661 (5th ed. H. Tiffany 1925):

"The sale should be publicly made at the time and place mentioned in the notice, and for the highest cash price. The sheriff is not absolutely bound, at the first public offer, to allow the property to be knocked down without regard to its fair market value, for there may be circumstances which will make it judicious for him to withdraw the property and report the circumstances to the court. The second offer will, however, usually be peremptory; nor can the sheriff justify himself for repeated refusals to let the property go for the best price he can get, upon the ground that in his judgment it is worth and ought to bring a larger price." *Id.* at 623.

The first edition of Professor Poe's work was published in 1880, and Maryland lawyers have regarded Poe as binding authority in their day-to-day practice of law for generations. Statements similar to that of Poe are found in 2 A. Freeman, *Law of Executions* § 283 at 1627 and § 288 at 1663-64 (3d ed. 1900). In fact, the latter author observes in § 288 that in the exercise of his discretion the sheriff "may and ought, even against the protest of the plaintiff, to adjourn the sale, or return that the property is unsold for want of bidders, whenever he sees that his proceeding with the sale is likely to operate as a sacrifice of the property in excess of that usually attendant on forced sales of like property." To like effect *see Lankford v. Jackson,* 21 Ala. 650, 653 (1852); and

*Todd & Rafferty v. Hoagland et al.,* 36 N.J.L. 352, 354 (1873). J. Crocker, *The Duties of Sheriffs, Coroners and Constables* § 488 (3d ed. J. Kerr 1890), states relative to the analogous situation of sale of personal property:

> "If he cannot get a reasonable price for goods it is his duty to suspend the sale, and if for this cause he is unable to make the money by the return day, and is required by the plaintiff to return the execution, he must return there to that the goods levied on remain in his hands for want of bidders. And he must still retain possession of the goods, and when he is served with a venditioni exponas, he must sell them at whatever price he can obtain. But he will not be justified in selling upon the execution, greatly under the value of the property. And the sheriff is not, in this respect, bound to obey the direction of the attorney, if he sees that it will produce great sacrifice of property; but he should postpone the sale where the plaintiff cannot sustain any injury by the delay. The officer should take all necessary means to secure the sum directed to be levied, but as to the time, place, and manner of sale he is vested with a sound discretion." *Id.* at *228-29 (footnotes omitted).

In *Home Owners' Loan Corporation v. Braxtan,* 220 Ind. 587, 592, 44 N.E.2d 989 (1942), the court stated, "The purpose of the sale is not to afford some stranger an opportunity to make off with the property of the judgment defendant to his own great advantage and to the great disadvantage of either the judgment defendant or the judgment creditor." To similar effect *see Lankford,* 21 Ala. at 653 (where a sale for $6 of land "worth one thousand dollars" was set aside); and *City of St. Louis v. Peck,* 319 S.W.2d 678, 682 (Mo. App. 1959).

The recognized test of inadequacy is the price received in comparison with what the property would bring at a fair sheriff's sale. *City of St. Louis,* 319 S.W.2d at 684; *Fox v. Jackson,* 116 Ind. App. 390, 394, 64 N.E.2d 799 (1946); *Atcheson v. Hutchison,* 51 Tex. 223, 234 (1879); and 33 C.J.S. *Executions* § 233 at 493 (1942).

Although the cases and the authorities indicate that a sale will not be set aside for mere inadequateness of price, they state that if the sale is so grossly inadequate as to shock the conscience of the court, or if there be but slight circumstances of unfairness in addition to great inadequateness of price, a sale will be set aside. *See, e.g., Graffam v. Burgess,* 117 U. S. 180, 192-93, 6 S. Ct. 686, 29 L. Ed. 839 (1886); *Ross v. Brown,* 396 F. Supp. 192, 194-95 (E.D. Tex. 1975); *Henderson v. Sublett,* 21 Ala. 626, 630 (1852); *Blasingame v. Wallace,* 32 Ariz. 580, 587, 261 P. 42 (1927); *Johnson v. Jefferson Standard Life Insurance Co.,* 5 Ariz. App. 587, 588, 429 P. 2d 474 (1967); *Home Owners' Loan Corporation v. Braxtan,* 220 Ind. at 590; *Fox v. Jackson,* 116 Ind. App. at 394; *Sapinsky v. Stout,* 101 N.J. Eq. 813, 816, 138 A. 899 (1927); *Wagener et al. v. Yetter et al.,* 280 Pa. 229, 232, 124 A. 487 (1924); *Chamblee v. Tarbox,* 27 Tex. 139, 145 (1863); 30 Am. Jur.2d *Executions* § 733 (1967); 33 C.J.S. *Executions* § 234; A. Freeman, *op. cit.* § 309; H. Herman, *Executions* § 252 (1875); and D. Rorer, *op. cit.,* 290.

Virtually the same language has been used in our cases referring to judicial sales. *See, e.g., Garland v. Hill,* 277 Md. 710, 712-13, 357 A. 2d 374 (1976); *Arban v. Rogers,* 262 Md. 738, 740, 279 A. 2d 457 (1971); *So. Maryland Oil v. Kaminetz,* 260 Md. 443, 454, 272 A. 2d 641 (1971); *Silver Spring Dev. v. Guertler,* 257 Md. 291, 297, 262 A. 2d 749 (1970); *Habib v. Mitchell,* 257 Md. 29, 35, 261 A. 2d 744 (1970); and *Waring v. Guy,* 248 Md. 544, 549, 237 A. 2d 763 (1968). As a matter of fact, in *Darraugh v. Preissman,* 193 Md. 448, 452, 67 A. 2d 262 (1949), and A. Freeman, *op. cit.,* § 309 at 1808 n. 107, the citations given for such a statement with reference to sheriffs' sales are actually Maryland cases which involve judicial sales. The similarity between the two, aside from the fact that the court is the vendor in the case of a judicial sale, is demonstrated by the statement by Judge Eccleston for our predecessors in *Manahan v. Sammon,* 3 Md. 463 (1853):

"It has been very correctly said, that judicial sales are always favored by courts. That a purchaser under an execution upon a judgment subsequently reversed will, nevertheless, hold a valid title to the

property; and that the result will be the same where a sale is made under a *fi. fa.,* issued more than three years after the date of the judgment, without being revived by a *sci. fa.,* unless the sale is set aside by some proceeding on the part of the defendant in that particular case." *Id.* at 470-71.

It will be seen from our discussion that a writ of fieri facias does not constitute a license to sell property of debtors without regard to its value in relation to the bids offered. The error into which the trial court and the Court of Special Appeals fell was in concluding that even though the sale price was grossly inadequate, they were powerless to act. One does not expect a price produced at a forced sale to be commensurate with fair market value. This is particularly true in a case such as this where bidders were not permitted to inspect the interior of the dwelling. However, the spread here between a fair market value of $18,000 ($24,000 appraisal less mortgage of $6,000) and the $2,000 sale price is indicative of an unfair sheriff's sale, such as shocks the conscience of the Court. *See* the numerous examples cited by H. Herman, *op. cit.* at 414-16. It follows that the trial judge erred in not setting the sale aside.

> *Judgment reversed; case remanded to the Court of Special Appeals for passage of an order reversing the order of the Circuit Court for Baltimore County; the parties to pay their respective costs.*