857 A.2d 519

**Rebecca GRIFFIN**

v.

**Lewis F. SHAPIRO.**

**No. 1786, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Sept. 3, 2004.

Alexander Wright, Jr., Towson, for Appellant.

Greg I. Rose (Edward J. Friedman on the brief), Baltimore, for Appellee.

Panel: HOLLANDER, KENNEY, WILLIAM W. WENNER (Ret'd, specially assigned), JJ.

KENNEY, Judge.

Rebecca Griffin appeals from an order of the Circuit Court for Baltimore County denying her request to set aside a sheriff's sale. On appeal, she asks two questions, which we have reworded:

1. Did the circuit court err by not setting aside the sheriff's sale because the sale price was grossly inadequate due, in part, to the listing of an incorrect zip code in the advertisement for the sale?

2. Did the circuit court err by determining that appellant was not entitled to credit for payments made under an "Interim Forbearance Agreement?"

Answering "no," we shall affirm the judgments of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 1997, Lewis Shapiro, appellee, obtained a judgment by confession against appellant, in the Circuit Court for Baltimore City.[1] The claim underlying the judgment arose "from a defaulted deed of trust secured by assets, including real estate, a liquor license, and other business assets located

---

1. The judgment also was entered against Royreal Rhines, John Rhines, and John Griffin, none of whom are parties to this appeal.

at 1804 Greenmount Avenue, Baltimore, Maryland, and owned by Royson, Inc." The judgment was in the amount of $74,108.61 plus interest.

On August 20, 1997, appellee filed a "Notice of Entry of Confessed Judgment" in the Circuit Court for Baltimore County. Appellant moved to vacate the judgment, arguing:

1. That [appellant] is a resident of Baltimore City, Maryland.
2. That [appellant] was never served a copy of the complaint for Judgment by Confession.
3. That [appellant] never signed or authorized the signing of [a] promissory note.
4. That [appellant] never entered into any agreement with [appellee].

The circuit court denied appellant's motion and the judgment was entered in Baltimore County.

On February 2, 1998, appellee filed a "Request for Writ of Execution," directing the Baltimore County Sheriff's Office ("Sheriff") to levy upon real property, consisting of a Cape Cod style home with a detached garage, owned by appellant and her husband, John Griffin, located at 7800 Liberty Road, Baltimore, Maryland 21207. On February 3, 1998, the Sheriff levied and attached the property, but no sale was conducted. Seven months later, appellant filed a suggestion of bankruptcy in the circuit court and no further action was taken on the confessed judgment at that time.

In November 1999, the parties executed an "Interim Forbearance Agreement" (the "Agreement"), which provided, in part:

### RECITALS

WHEREAS, [appellee] obtained a judgment against [appellant] and others in the Circuit Court for Baltimore City . . .; and

WHEREAS, on the 25th day of March, 1999 [appellant] filed her Amended Voluntary Petition for relief under Chap-

ter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland . . .; and

WHEREAS, the claim underlying the judgment arises from a defaulted deed of trust secured by the assets, including real estate, a liquor license, and other business assets located at 1804 Greenmount Avenue, Baltimore, MD, and owned by Royson, Inc.; and

WHEREAS, [appellant's] spouse, John Griffin, is a fifty percent shareholder and officer of Royson, Inc.; and

WHEREAS, [appellant] will shortly file a Third Amended Chapter 13 Plan (the "Plan") in her bankruptcy proceeding which Plan includes certain terms and conditions regarding the interim forbearance of [appellee] from prosecuting his claim and, moreover, the ultimate payment of the same.

\* \* \*

Section 1. *Forbearance*

1.1 [Appellee] hereby agrees to forebear from prosecuting or exercising any of the federal, state, or contract rights that he would otherwise have against either (i) |appellant], (ii) any real estate in which [appellant] has interest, and/or (iii) the assets of Royson for so long as [appellant] remains in compliance with the terms and conditions of the Plan.

1.2 [Appellant] has agreed that she will make adequate protection payments to [appellee] outside of the Plan of $500.00 per month with said payments to be made on the fifteenth (15th) day of each month beginning November 15, 1999. . . . Moreover, following confirmation, [appellant's] spouse will use his best efforts to market the real estate known as the Royson Real Estate (1804 Greenmount Avenue) for the purpose of selling the same to satisfy the debt due [appellee]. Unless the Royson Real Estate is sooner sold, the $500.00 payments shall continue for the entire terms of the Plan.

\* \* \*

1.4 For so long as [appellant] honors her obligations to [appellee] under the Plan, [appellee] agrees to continue to forebear as set forth in paragraph 1.1. However, in the event [appellant] is in default of those obligations in paragraph 1.1, then, in event, [appellee] may enforce his rights against Royson's assets and may seek appropriate relief in the bankruptcy court with regards to any other property in which [appellant] has an interest.

The United States Bankruptcy Court for the District of Maryland approved the Agreement on March 30, 2000. During the pendency of the bankruptcy proceedings, and pursuant to the Agreement, appellant paid $27,196.42 to appellee. On June 19, 2001, the bankruptcy court entered an order "discharging [appellant] after completion of payments under [the] plan."

In May 2003, appellee filed another "Request for Writ of Execution" in the circuit court, directing the Sheriff to levy upon the Liberty Road property owned by appellant and her husband. The Sheriff levied and attached the property on May 21, 2003. An advertisement was placed in The Jeffersonian, a weekly newspaper, and ran once a week for three successive weeks prior to the sale, which occurred on July 9, 2003. The advertisement stated:

Office of the

Sheriff of Baltimore County

R. Jay Fisher

401 Bosley Avenue

Towson, Maryland 21204

410–887–3151

SCHEDULE

Of the property executed and levied upon by R. Jay Fisher, Sheriff of Baltimore County, this 21st day of May, 2003 by

virtue of a writ of Execution issued out of the Circuit Court for Baltimore County, and directed to the Sheriff thereof against the Goods and Chattels, Lands and Tenements of John & Rebecca Griffin at the suit of Lewis Shapiro and appraised by us, the subscribers, who were first duly summoned and sworn for the purpose

*TO BE SOLD:* Property known as 7800 Liberty Rd., 21207 with the following improvements: One stone cape cod house with a detached garage.

*TERMS OF SALE:* $10,000.00 Deposit, cash or cashiers check at the time of the sale, balance to be paid within 45 days of court ratification. Judgment creditor is permitted to buy in at the sale using their judgement. Additional terms, if any, will be announced at the time of the sale.

*PLACE OF SALE:* 7800 Liberty Rd., 21207

*DATE:* July 9, 2003 10AM

*AUCTIONEER:* Baltimore Auction Co.—IRV SASS 410-526-4626

As noted, the advertisement listed the zip code as 21207. In fact, it is now 21244. When appellant and her husband purchased the property in 1992, the zip code was 21207, as evidenced by the "Affidavit of Residential Use" in the deed. Some time after the sale, however, the zip code was changed to 21244. At the time of the sale, appellant was occupying the home and would not allow prospective purchasers to inspect the interior. There were approximately four bidders at the sale. Stewart D. Sachs Real Estate, LLC purchased the property for the price of $70,000.

Appellant filed "Exceptions to Sale" in the circuit court, requesting that the sale be set aside for the following reasons. First, she argued that the sales price was "grossly inadequate." In support of that argument, she asserted that a recent appraisal determined the fair market value of the property to be $185,000 and that the tax assessment was $160,000. Second, she contended that the advertisement for the sale was "deficient" because it "failed to conspicuously denote that the Sheriff was conducting a sale." Third, the

wrong zip code in the advertisement resulted in readers of the advertisement believing that the property was "in an area of lesser economic value." Fourth, appellant argued that she was entitled to credit for the payments she had made under the Agreement.

Appellee responded that the sale was "an arm's length transaction," and the price was fair and adequate considering "the unpaid balance of the first mortgage and the unknown condition of the inside of the property."[2] He also contended that the incorrect zip code did not impact the sale because Liberty Road is "clearly known to be in Baltimore County" and is a "major artery off the Baltimore Beltway ... and known to anyone in the area or easily ascertained by anyone who lives outside the area." Finally, he argued that appellant was not entitled to a credit because the payments under the Agreement were "merely ... to assure [appellee's] position during the bankruptcy proceeding and to assure [that he] had some protection as to its collateral while the bankruptcy progressed."

At the hearing on the exceptions, the central dispute was the alleged inadequacy of the sale price and whether the zip code that was incorrectly listed in the advertisement contributed to the unfair sale. According to Irvin Sass, an auctioneer who conducted the sale, the 21207 zip code included parts of both Baltimore City and Baltimore County.[3] He testified that before the sale, he had received several telephone calls about appellant's property, but the "main reason why those bidders did not come" was because they "did not want to come to a sale where it [was] court approved several months later, they want[ed] a normal contemporary settlement...." Sass averred that "equivalent" properties located in the 21207 and 21244 zip codes were "the same value." In his opinion, the incorrect zip code did not impact the sale because the Liberty

---

2. The property was encumbered by a first mortgage in the amount of approximately $28,000.

3. Appellee called Sass as a witness. Appellant did not call any witnesses at the hearing.

Road address, which was located directly off the Baltimore Beltway, was "very obvious" and "[stuck] out like a sore thumb." He acknowledged that within the 21207 zip code, however, properties that were located in the 6800 or 6900 block of Liberty Road and closer to Baltimore city were less expensive than those in the 7900 block of Liberty Road.

The circuit court "overruled" the exceptions and "approved" the sale, providing the following findings in a written order:

1. Notices

Notices of the sale ("Notices") for three successive weeks did not contain the phrase "Sheriff's Sale" or "Public Auction" in large type as did other sale notices published at the same time.... In addition, the Sheriff's address and telephone number were listed. The Notices appeared on pages of the *The Jeffersonian* newspaper with other notices of sale by the Sheriff, estate and public auctions, and trustee sales. Testimony from Captain Huson of the Sheriff's Office explained that the newspaper adds the phrase to some of the Notices; but, it doesn't always include the phrase. The phrase is not part of the notice submitted by the Sheriff to the newspaper for publication.

No rule or case requires the use of the phrase. Having reviewed the Notices themselves and the Notices *in situ* with other advertised sales, the Notices do not appear to be inadequate or insufficient in any way.

\* \* \*

The two zip codes, 21207 and 21244, are adjacent to one another. The Court was concerned about the use of the wrong zip codes since in some areas in Maryland, property owners go to great lengths to have a desirable zip code attached to their property. The undisputed testimony was that in this situation, one zip code was not more "valuable" to prospective purchasers than the other.

Having carefully considered the arguments of the parties, the Court is persuaded that use of the wrong zip code in this case was not unfair to [appellant] because the address

was otherwise correct and the address is in a prominent location. Liberty Road is a busy commercial and residential road; there is a Liberty Road exit off of I–695, the Baltimore Beltway. Prospective purchasers of properties in the area would be familiar with the various blocks of Liberty Road and not likely to be deterred by the wrong zip code.

\* \* \*

2. Sale Price

[Appellant's] property was valued for tax assessment in the amount of $161,000. [Appellant] obtained an appraisal showing fair market value of $185,000. [Appellant] did not permit prospective purchasers access to the interior of her house and garage.

\* \* \*

The property in the instant case has an unpaid mortgage balance of $28,000. The difference between the fair market value of $185,000 less the mortgage is $157,000. The sale price of $70,000 does not shock the conscience of this Court under the circumstances, i.e., no access to the interior, [appellant] still in possession of property, delay in obtaining title due to litigation. The sale price obtained from an unrelated purchaser was slightly more than half of the value of the property. . . .

3. Forbearance Payments

\* \* \*

[Appellant] was not given credit for $27,196.42 in payments made pursuant to the [Agreement] reached by the parties during her Chapter 13 bankruptcy.

The [Agreement], dated November 11, 1999, between [the parties] required that [appellant] make "adequate protection payments" of $500.00 per month. The parties agree that the amount in issue is $27,196.42. [Appellant] made the payments throughout her Chapter 13 bankruptcy.

On June 19, 2001, an Order was entered discharging [appellant] after Completion of Payment under her Plan and a Final Decree was issued closing the case. According to [appellant], her "obligation under the Agreement was concluded." Nevertheless, [appellant] claims that [appellee] was still obligated to send her notice of default under the Agreement. The argument frankly makes no sense. [Appellee] agreed to forbear [from] taking action against the property so long as [appellant] made her payments. [Appellee] did so forbear. The Agreement was effective only during the bankruptcy. With the conclusion of the bankruptcy, the obligations to pay and to forbear were terminated.

[Appellant] seeks to have the payments credited to the unpaid judgment held by [appellee] against her. Nothing in the Agreement provides that the payments would be so applied. [Appellant] was represented by counsel; and, the Agreement was the product of intense negotiations by the parties. [Appellee] sought relief from the stay in bankruptcy to sell the property. No motivation for [appellee] to have accepted payments under the Agreement and allow credit against his judgment was proffered by [appellant] rather than proceed with sale of the property. Given the express language of the Agreement, which fails to provide for such credit, and the lengthy delay [appellee] has experienced in collecting this 1997 judgment, the Court finds that [appellant] has failed to carry her burden of proof on this issue.

This timely appeal followed.

## DISCUSSION

### I. Adequacy of the Sale

Sheriff's sales are governed by Md.Code (1974, 2002 Repl. Vol.), § 11–501 *et seq.* of the Courts and Judicial Proceedings Article ("CJ") and Maryland Rules 2–641 through 2–644. Upon the written request of a judgment creditor, the clerk of the court where the judgment was entered is required to issue a writ of execution "directing the sheriff to levy upon property

of the judgment debtor to satisfy a money judgment." Md. Rule 2–641(a). In the case of real property, the sheriff shall levy upon a judgment debtor's interest in real property pursuant to a writ of execution by entering a description of the property upon a schedule and by posting a copy of the writ and the schedule in a prominent place on the property. Md. Rule 2–624(a). The sheriff must "give notice of the time, place, and terms of the sale of any property under execution before the property can be sold." CJ § 11–502(a); *see* Md. Rule 2–644(b). The notice must be posted on the courthouse door or on a bulletin board in its immediate vicinity and "printed in a newspaper published in the county where the property is located at least: ... (2) 20 days before the sale of real property." CJ § 11–502(b)(2); *see* Md. Rule 2–644(b).

In explaining the differences between a sheriff's sale and other forced sales of real property, i.e., a foreclosure or a tax sale, the Court of Appeals has stated:

> In making ordinary execution sales, simply by virtue of his office, the sheriff or marshal acts as the ministerial officer of the law, not as the organ of the court. He is not its instrument or agent, as in judicial sales, and the court is not the vendor. His authority to sell rests on the law and on the writ, and does not, as in judicial sales, emanate from the court. The functions of the court terminate at the rendition of the judgment, except where confirmation of the sale is the practice. The court does not direct what shall be levied or sold, or how the sale shall be made. The law is the officer's only guide.

*Goldberg v. Frick Elec. Co.*, 363 Md. 683, 693, 770 A.2d 182 (2001) (quoting *Judicial and Execution Sales* § 46 (1873)).

 A sheriff has discretion when conducting a sale, but the sale "should be so conducted as to promote competition and to secure the best price." *Goldberg*, 363 Md. at 696, 770 A.2d 182 (quoting *Buckeye Dev. Corp. v. Brown & Shilling, Inc.*, 243 Md. 224, 229–30, 220 A.2d 922 (1966)). Nevertheless, whatever may be the limits of that "certain amount of discretion" it must be fairly and impartially exercised for

the benefit of all concerned. Ordinarily, the sheriff may follow the reasonable directions of the judgment creditor but he should be at all times aware that he is not merely the servant of the creditor and that the debtor may have interests which he has a duty to protect. Indeed, in some circumstances, the bidders at the sale may be drawn within the purlieus of his duty to be fair and impartial.

*Id.*

Appellant argues that the sale price of her property was grossly inadequate and that the incorrect zip code contained in the advertisement "contributed to the circumstances of unfairness." We are not persuaded.

The parties both rely on *McCartney v. Frost,* 282 Md. 631, 386 A.2d 784 (1978). In *McCartney,* a sheriff sold a house, which had an "estimated value" of $25,000 and an existing mortgage of $6,000, for $2,000. There were two bidders at the sale and, as in this case, the judgment debtor, who was still occupying the house, "declined to permit inspection of the inside of the house." *Id.* at 634, 386 A.2d 784. At the hearing to set aside the sale, the auctioneer testified that he had told the bidders the following:

> Ladies and Gentlemen, I am offering you a home, as it may appear, you are buying a pig in a bag, because I don't know what is against the property, which I have always stated at Sheriff's sales for the [past] fifty-six years. They are buying a pig in the bag. I don't know what is in the house and nobody has been in to see it. I can't tell you. You are buying a pig in the bag. What do I hear?

*Id.* at 635, 386 A.2d 784. The circuit court found that the purchase price was not grossly inadequate and refused to set aside the sale.

On appeal, the Court of Appeals stated that the "recognized test of inadequacy is the price received in comparison with what the property would bring at a fair sheriff's sale." *Id.* at 638, 386 A.2d 784. A sale will not be set aside for mere inadequacy of price unless it is "so grossly inadequate as to shock the conscience of the court, or if there be but slight

circumstances of unfairness in addition to great inadequateness of price." *Id.* at 639, 386 A.2d 784. The Court of Appeals held that the sale should have been set aside, stating:

> One does not expect a price produced at a forced sale to be commensurate with fair market value. This is particularly true in a case such as this where bidders were not permitted to inspect the interior of the dwelling. However, the spread here between a fair market value of $18,000 ($24,000 appraisal less mortgage of $6,000) and the $2,000 sale price is indicative of an unfair sheriff's sale, such as shocks the conscience of the Court.

*Id.* at 640, 386 A.2d 784.

Although a different species of sale from a sheriff's sale, we look to foreclosure cases for additional guidance.[4] In *Arban v. Rogers,* 262 Md. 738, 741, 279 A.2d 457 (1971), the Court of Appeals held that the purchase price, which represented ninety-percent of the fair market value of the property, did not "shock the conscience of this Court, or offe[ ]r to it any color of fraud or irregularity." In *Silver Spring Dev. Corp. v. Guertler,* 257 Md. 291, 262 A.2d 749 (1970), the Court of Appeals refused to set aside a sale in which the sale price represented sixty-eight percent of the property's fair market value. Citing with approval *De Tamble v. Adkins,* 210 Md. 414, 124 A.2d 276 (1956), the Court of Appeals stated: " '[U]nless the disparity between the valuation of the property and the price obtained for it is such as to shock the conscience of the court, the sale will not be set aside for mere inadequacy of price.' " *Guertler,* 257 Md. at 297, 262 A.2d 749.

In *Habib v. Mitchell,* 257 Md. 29, 261 A.2d 744 (1970), the mortgagor averred that a "disparity in appraisal figures and the fact that . . . the mortgagee . . . purchased the property" should invalidate the sale. One appraisal for the property established that the fair market value was $57,850; another

---

**4.** The Maryland Rules governing a sheriff's sale and a foreclosure have the same limited notice requirements. Both require that notice must be given of the time, place, and terms of the sale of the property. *See* Md. Rules 2–644(b) and 14–303(b).

established a fair market value of $100,800. The mortgagee started the bidding and acquired the property for $57,850. The Court of Appeals refused to set aside the sale, holding that the

> fact that the mortgagee is watched closely does not require him to act inimically to his own interests. There is no evidence that the sale was not properly advertised or that bidding was discouraged. There is no evidence that the sale was attended by any fraud. Good faith does not require him to pay the higher of the two appraisals.

*Id.* at 35, 261 A.2d 744.

In *Ten Hills Co. v. Ten Hills Corp.,* 176 Md. 444, 5 A.2d 830 (1939), the mortgagor excepted to the sale, alleging that the sale price was grossly inadequate and the sale was inadequately advertised. The mortgagor, however, did not identify any persons who would have paid more for the property and offered no evidence that the property was worth more than the sale price. *Id.* at 449, 5 A.2d 830. The Court of Appeals upheld the sale, concluding that "any resale would be an idle experiment without promise of benefit to the mortgagor or the mortgagee." *Id.* at 455, 5 A.2d 830. The Court reasoned that, "in the absence of any showing of prejudice," it would not "interfere with a sale fairly made because of trivial discrepancies or inconsequential errors." *Id.* at 449, 5 A.2d 830. Thus, "nonprejudicial inaccuracies or irregularities in the notice or conduct of sale . . . [would] not vitiate a sale." *Id.* at 451, 5 A.2d 830. Moreover, a sale would not be set aside because of an inadequate price unless it was "so glaring and palpable as to indicate fraud or unfairness, or to suggest that the trustee lacked the judgment and skill necessary to any adequate administration of the duties of his office." *Id.*

Here, the Sheriff sold appellant's property for $70,000. There were four prospective bidders at the auction, but appellant, who was still in possession of the home, would not allow any of them to inspect its interior. The property was encumbered by a first mortgage in the amount of approximately $28,000. The tax assessment was based on a value of $160,000

and the appraised value was $185,000. Unlike *McCartney,* in which the sale price represented approximately eleven percent of the fair market value, the sale price in this case represented approximately forty-five percent of the property's value, based on the appraisal, and fifty-three percent, based on the tax assessment. Under these circumstances, we are persuaded that the circuit court's determination that the "sale price of $70,000 did not shock the conscience of this Court" was not clearly erroneous.

We also are not persuaded that the sale price coupled with the incorrect zip code in the advertisement established unfair "circumstances" that required the sale to be set aside. A sheriff is required to give notice of the "time, place, and terms of the sale of any property under execution before the property can be sold." CJ § 11–502(a); *see* Md. Rule 2–644(b). Here, the advertisement stated that the property was located at 7800 Liberty Road, 21207 and identified the improvements as a "stone cape cod home with a detached garage." Although the zip code was incorrect, the address was accurate. Thus, the advertisement described the property in such terms that it could be easily located by the exercise of ordinary intelligence. *See Waters v. Duvall,* 6 G. & J. 76, 1834 WL 1980, 1834 Md. LEXIS 3 (1834) (holding that a writ directing the sheriff to give possession of "part of Duvall's Pasture, containing one hundred and fifty acres, part of a tract called Tewkesbury, and part of Tewkesbury and Walker's Delight, containing one hundred and fifty acres, and part of a tract of land called Friendship, containing one hundred and eighty acres" was void for uncertainty); *Williamson v. Perkins,* 1 H. & J. 449, 1803 WL 421, 1803 Md. LEXIS 17 (holding that the return on a writ, which described the property as a "dwelling house, griss-mill, saw-mill, and fulling-mill, and all other buildings belonging thereunto, with one hundred acres of land joining the said property," was "defective for want of a specification of the property").

The evidence also supported a finding that the incorrect zip code did not prejudice the sale of the property. *See Goldberg,*

363 Md. at 704–05, 770 A.2d 182 (holding that a sheriff's sale will be set aside if the advertisement contains information that is material and inaccurate and which is relied upon by a purchaser "so as to make the sale so unfair as to materially prejudice the purchaser, or others in interest"). Irvin Sass testified that, before the sale, he had received several telephone calls about the property, but the "main reason why those bidders did not come" was because they "did not want to come to a sale where it [was] court approved several months later, they want[ed] a normal contemporary settlement. . . ." Moreover, Sass averred that equivalent properties located in both zip codes were "the same value." In his opinion, the incorrect zip code did not impact the sale because the Liberty Road address, which was located directly off the Baltimore Beltway, was "very obvious" and "stuck out like a sore thumb." Based on that evidence, the circuit court was not clearly erroneous in concluding that, in this case, the "use of the wrong zip code . . . was not unfair to appellant."

## II. The Agreement

■ Appellant contends that the circuit court erred by determining that she was not entitled to credit for payments made under the Agreement. Again, we are not persuaded.

■ Maryland follows the objective law of contract interpretation. *See Taylor v. NationsBank, N.A.,* 365 Md. 166, 178, 776 A.2d 645, 653 (2001). "The clear and unambiguous language of an agreement will not give way to what a party thought the agreement meant or was intended to mean." *County Comm'rs v. St. Charles Assocs.,* 366 Md. 426, 444, 784 A.2d 545 (2001). A written contract will be considered ambiguous when it is susceptible to more than one interpretation when examined by a reasonably prudent person, *see Calomiris v. Woods,* 353 Md. 425, 436, 727 A.2d 358, 363 (1999); however, "if a written contract is susceptible of a clear, unambiguous and definite understanding . . . its construction is for the court to determine." *Wells v. Chevy Chase Bank, F.S.B.,* 363 Md. 232, 251, 768 A.2d 620, 630 (2001) (quoting *Rothman v. Silver,* 245 Md. 292, 296, 226 A.2d 308, 310 (1967)) (internal quotations

omitted). Under the objective law of contract interpretation, the court will give force and effect to the words of the contract without regard to what the parties to the contract thought it meant or what they intended for it to mean. *See Auction & Estate Representatives, Inc. v. Ashton,* 354 Md. 333, 340–41, 731 A.2d 441 (1999)(quoting *Calomiris,* 353 Md. at 436, 727 A.2d at 363); *Board of Trustees v. Sherman,* 280 Md. 373, 380, 373 A.2d 626 (1977).

In November 1999, the parties executed the Agreement, which provided that appellee had obtained a judgment against appellant and, subsequently, appellant had filed a Chapter 13 bankruptcy petition. As part of the bankruptcy proceedings, appellant had filed a plan with the bankruptcy court, "which included certain terms and conditions regarding the interim forbearance of [appellee] from prosecuting his claim and, moreover, the ultimate payment of same." Appellee promised to forebear "from prosecuting or exercising any right" that he "would otherwise have" against appellant and, in return, appellant would "make adequate protection payments" of $500 per month to appellee. The Agreement was to be in effect for the "entire term" of the plan in bankruptcy. It did not specify that appellant's payments would be credited against the outstanding amount that she owed to appellee.

The circuit court found that "nothing in the Agreement provide[d]" that the payments would be credited to appellant. The court noted that, before executing the Agreement, the parties had been represented by counsel and had engaged in "intense negotiations," but a credit provision had not been included. Therefore, the circuit court found that "appellant had failed to carry her burden of proof." Based on an objective reading of the express language of the Agreement, we cannot dispute that finding. The circuit court did not err.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**