## COURT OF APPEALS, JUNE TERM, 1821.

### BORING's Lessee vs. LEMMON.

*A patent fraudulently obtained is void, and if one afterwards issues for the same land, the legal estate becomes vested in the second patentee. A deed from a sheriff to a vendee, at a sale under a fi. fa. is not necessary to pass the legal estate, but the same becomes vested in the vendee by operation of law*

APPEAL from *Baltimore* county court. Ejectment for a tract of land called *Boring's Habitation Rock.* The general issue was pleaded, and a verdict taken for the plaintiff, subject to the opinion of the court, on the following statement of facts, viz. "*Boring's Habitation Rock* was granted to *Ezekiel Boring,* the lessor of the plaintiff, the 24th of April 1795. The grant was founded upon a certificate of survey that had been returned into the land office in due and regular time, and dated the 8th day of October 1794. One *Christian Singery* had, under a warrant, caused a survey to be made of a quantity of land in *Baltimore* county, of which a certificate of survey was made out by the surveyor, on or about the 30th of April 1770, under the name of *Singery's Trouting Stream,* which certificate was delivered to *Singery* to be returned to the land office. As the survey was made by the surveyor, and according to his certificate, the quantity of land included in it was 170½ acres, and for this quantity only he made a compensation to the Lord Proprietor; this certificate did not include any part of the lands afterwards included in the tract called *Boring's Habitation Rock;* after the certificate was so delivered by the surveyor to *Singery,* he *(Singery)* fraudulently caused the courses and distances, or description of the land, in such certificate, so to be altered, (by inserting a call for the beginning of *Petticoat's Loose,)* as to make it embrace the whole of the lands afterwards included in *Boring's Habitation Rock,* and he caused the certificate, so altered, to be returned to the land office; afterwards, on or about the 20th of April 1775, he obtained a patent from the then Lord Proprietor, agreeably to the certificate, as altered, the Lord Proprietor and his officers being ignorant of the alteration. *Boring,* after having obtained his patent, brought an ejectment against *Singery,* (who was in possession,) in the late general court, to October term 1795, and at October term 1799 recovered a verdict and judgment for the whole tract called *Boring's Habitation Rock;* from this judgment *Singery* appealed to the court of appeals, where it was reversed at November term 1802, and the case sent back by writ of *procedendo* to the general court. (See 4 *Harr. & M'Hen.* 398.) Upon the second

JUNE 1821.

Boring
vs
Lemmon

trial in the general court at October term 1805, *Singery* obtained a verdict and judgment against *Boring.* While this ejectment was depending in the general court, under the writ of *procedendo,* and about the 19th day of November 1799, *Boring* filed a bill in the court of chancery, [in the name of The *Attorney General,* at his relation, against *Singery,*] alleging that *Singery* had fraudulently altered his certificate of *Singery's Trouting Streams,* and had, upon that fraudulent alteration, obtained a patent which embraced the land included in *Boring's Habitation Rock* which the original and lawful certificate would not have included, and prayed for relief. While this suit in chancery was depending, the verdict and judgment in favour of *Singery,* as before mentioned, were had, and on that judgment *Singery* issued a *fieri facias* the 22d November 1805, for the costs. The *fieri facias* was levied by the sheriff of *Baltimore* county on the land included in *Boring's Habitation Rock,* under the name of *Habitation Rock;* and the sheriff regularly sold said land at public sale on the 2d of January 1806, to *Thomas Lemmon,* the defendant in this cause, for $174 05, which sum *Lemmon* paid to the sheriff, and he paid it over to *Singery.* The sheriff made return of the *fieri facias,* with a schedule thereto annexed, stating that the lands, &c. of *Boring,* had been seized under the *fieri facias,* viz. "One tract of land called *Habitation Rock,* containing 360 acres more or less, situated in north hundred, *Baltimore* county, adjoining the lands of," &c. and valued at fifty cents per acre. He also certified, that said land "was sold at public sale, on the premises, on the 2d of January 1806, to *Thomas Lemmon,* at fifty-one cents per acre." *Lemmon* afterwards, in pursuance of said sale, entered into possession of the lands included in *Boring's Habitation Rock,* and became seized and possessed thereof so far forth as the law authorized under said proceedings, and claims the same as his property. At the time of issuing and levying the *fieri facias* on said land, and selling the same, *Boring* resided in the State of *Pennsylvania,* and knew nothing of said proceedings. The suit in the court of chancery continued depending before that court until the 7th of August 1806, when the chancellor decreed, that the defendant *Singery* should convey to *Boring,* and his heirs, all that part of the land included in the

patent of *Singery's Trouting Streams*, which was also comprehended in the lines of *Boring's Habitation Rock*.

From this decree *Singery* appealed to the court of appeals, where the decree was affirmed at December term, 1809. In pursuance of that decree and affirmance, *Singery* executed, in due and legal form, a deed for said land to *Boring*, on the 15th day of July 1812. The land conveyed by that deed, is so much of the land contained in the patent for *Singery's Trouting Streams*, as was included by the fraudulent alteration of the certificate by *Singery*, and as was also included in the patent for *Boring's Habitation Rock*, and is the land for which this ejectment is brought. On this statement the court below gave judgment for the defendant, and the plaintiff appealed to this court.

The case was argued before CHASE, Ch. J. BUCHANAN, EARLE, and MARTIN, J.*(a.)*

*Winder*, and *B. C. Howard*, for the appellant, relied on *The State vs. Reed*, 4 *Harr. & M'Hen.* 10. *Spalding vs. Reeder*, 1 *Harr. & M'Hen.* 189, *D. Dulany's* opinion. *Kelly vs. Greenfield*, 2 *Harr. & M'Hen.* 141. *Carroll's lessee vs. Llewellin*, 1 *Harr. & M'Hen.* 162. *Bates vs. Graves*, 2 *Ves. jr.* 294; and *Boring's lessee vs. Singery*, 4 *Harr. & M'Hen.* 398.

*R. Johnson*, for the appellee, cited *Kilty's Land Hold. Ass.* 421, 452, 453. 3 *Blk. Com.* 431, 438. 2 *Blk. Com.* 308. *Bright vs. Eynon*, 1 *Burr.* 396. 1 *Com. on Cont.* 36, 37. *Fitzherbert vs. Mather*, 1 *T. R.* 12. *Hodgson vs. Richardson*, 1 *W. Blk. Rep.* 465. *Colt et al. vs. Woollaston & Arnold*, 2 *P. Wms.* 156. *Stent vs. Bailis*, *Ibid* 220. *Broderick vs. Broderick*, 1 *P. Wms.* 239. *Fermor's* case, 3 *Coke*, 77. *b*. *Alton Wood's* case, 1 *Coke*, 46. *a*. and *Boring's lessee vs. Singery*, 4 *Harr. & M'Hen.* 403.

CHASE, Ch. J. delivered the opinion of the court. It being admitted in this case that all the lands contained within the limits of *Boring's Habitation Rock*, were by fraud included in *Singery's Trouting Streams*, by *Singery's* fraudulently inserting in the certificate of *Singery's Trouting Streams*, a call for the beginning of *Petticoats Loose*, while *Singery* had the certificate in his possession, and before the same was returned to the land office; the court

*(a)Johnson*, and *Dorsey*, J. having been counsel for the parties did not sit.

JUNE 1821.

are of opinion, that the land thus included in *Singery's Trouting Streams*, did not pass to *Singery* by his patent, but that the same being comprehended within the limits of *Boring's Habitation Rock*, did pass to *Ezekiel Boring*, and that the legal estate vested in him absolutely under the grant for *Boring's Habitation Rock*.

The court are also of opinion, that the legal estate in *Boring's Habitation Rock* being vested in *Ezekiel Boring* at the time the *fieri facias* was levied on said land, the same was transferred by the sale of the sheriff to the vendee, *Thomas Lemmon*, by operation of law.

The court are also of opinion, that a deed from the sheriff to the vendee, although frequently taken out of abundant caution as an additional evidence of the vendee's title, is not necessary to vest the legal estate in him.

JUDGMENT AFFIRMED.