## IRENE J. McCARTNEY *v.* REX A. FROST

[No. 13, September Term, 1977.]

*Decided October 14, 1977.*

The cause was argued before MORTON, THOMPSON and POWERS, JJ.

*Jean S. Spotts* for appellant.

*Alfred L. Brennan,* with whom were *Brennan & Brennan* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

In law libraries in Maryland little can be found concerning a sale of real estate by a sheriff after levy of a writ of fieri facias on a judgment.

The case before us involves such a sale. The appellate decisions are few, and the only relevant statutory law is found in Code, Courts Art., §§ 11-501, 11-502, and 11-509, which read:

§ 11-501

"A sheriff to whom any writ of execution is directed may seize and sell the legal or equitable interest of the defendant named in the writ in real or personal property."

§ 11-502 (in part)

"(a) A sheriff shall give notice of the time, place, and term of the sale of any property under execution before the property can be sold.

"(b) In the case of a sale of an interest in property, the notice shall be posted on the courthouse door and printed in a newspaper, published in the county where the property is located at least:

* * *

"(2) 20 days before the sale of real property."

§ 11-509

"If a sheriff sells any interest of the defendant in any property, he shall convey it to the purchaser upon payment of the purchase price."

We have been directed to no Maryland Rule relating to a sheriff's sale of real estate, and we find none. The BR Rules relate only to a judicial sale, which, being defined as a sale of property which is subject to ratification by a court, excludes a sheriff's sale, which is not subject to ratification. The W Rules apply only to foreclosure of mortgages and other security devices.

This appeal by Irene J. McCartney, an owner in common of an undivided one half interest in a row house in Dundalk, is from an order of the Circuit Court for Baltimore County

denying her motion to set aside the levy and sale under a writ of fieri facias. No question was raised in the motion [1] concerning the original judgment, the issuance, or the levy of the writ of fi. fa. The attack was upon what the sheriff did, or failed to do, after he was instructed by the judgment creditor, John A. Greene, to proceed to sell the property.

The writ of fi. fa. was issued on 18 December 1975, showing a principal indebtedness of $3,429.00, attorney's fee of $342.90, and costs of $38.00. The writ was served and the levy made, according to the record, on 28 December 1975. Counsel for the judgment creditor gave instructions to the sheriff on 8 March 1976 to proceed with advertisement and sale. An advertisement of the sale, to be held on the premises at 11:00 A.M. on 20 April 1976, was published in The Jeffersonian, a weekly newspaper published in Towson, Baltimore County, on 25 March and on 1, 8, and 15 April 1976.

What was advertised and sold was "all the right, title, claim and demand at law and in equity of the said Harley J. McCartney and Irene J. McCartney in and to" the described property. At the sale the first bid was $1,500.00. The second bid, in the amount of $2,000.00, was made by Rex A. Frost, appellee. There were no other bids. The sheriff (through the auctioneer employed by him) declared the property sold to Dr. Frost for $2,000.00. The purchase price was paid, and on the same day the sheriff executed and delivered a deed conveying the property to Rex A. Frost.

Appellant's motion to set aside the sale, filed 20 days after the sale, alleged that the selling price was grossly inadequate and unconscionable, and that the sheriff "failed to do those things necessary to attract the bidders and

---

1. Judgment was entered by confession against Harley J. McCartney and Irene McCartney on 22 September 1971, on a promissory note, long overdue. The house had been purchased by the McCartneys as tenants by the entireties, but their ownership was converted to a tenancy in common by their subsequent divorce. Mrs. McCartney lived in the house. Mr. McCartney lived in West Virginia. The motion was mistakenly filed on behalf of both, but the record was later corrected to show that Mrs. McCartney was the only moving party. Mr. McCartney never appeared, nor did he respond in any way to various notices sent to him.

promote the bidding, and otherwise failed to act in good faith to procure the highest possible bid, as required to law".

The appellee was permitted, upon petition, to intervene. A hearing on the motion was held before Judge John N. Maguire on 11 June 1976. Testimony was heard from eight witnesses, and 15 exhibits were received in evidence. The judge directed counsel to file written memoranda. They did.

On 21 October 1976 Judge Maguire filed a Memorandum and Opinion, which concluded with an order denying the motion to set aside the sale. Appellant filed a motion for reconsideration of the court's memorandum and opinion. A further hearing was held, and testimony taken, on 6 December 1976. At its conclusion Judge Maguire said, "the Motion for Reconsideration of my Opinion is overruled, and the Motion [to Set Aside the] Writ of Fieri Facias is denied." Within 30 days thereafter the appellant filed an order for appeal from the judgment on the motion to set aside and on the motion for reconsideration.[2]

Appellant's arguments here are that the sale should have been set aside because:

1.  The price was grossly inadequate.
2.  The purchaser did not comply with the advertised terms of sale, that the property would be sold "for cash".
3.  There were irregularities in the procedure of the sale, which must be considered with the grossly inadequate price.

### Inadequacy of Price

Appellant presented evidence, not controverted, that the appraised value of the property, assuming clear title, was

---

2. Appellee has included in his brief a motion to dismiss the appeal, as not taken within 30 days from the order of 21 October 1976. He points out, correctly, that a motion for reconsideration does not suspend the running of the time for appeal. There is much to be said, however, for the argument that the hearing of 6 December 1976, at which the court heard further testimony, and again denied the original motion, was in fact a rehearing. In the unusual circumstances here, we shall deny the motion to dismiss the appeal, and consider the case on the merits.

$24,000.00, and that there was an encumbrance of $6,000.00 against it. This evidence indicates that for a price of $2,000.00 and a debt of $6,000.00, or a total of $8,000.00, the purchaser received a value of $24,000.00, three times the price. Appellant presents it as an equity value of $18,000.00 for a price of $2,000.00.

However put, the price certainly appears to be inadequate, perhaps grossly so. But there are other factors. A sheriff in effect sells a quitclaim interest.[3] He gives no assurance of good title. As the auctioneer put it in his testimony, at a sheriff's sale he is selling "a pig in a bag". Another factor was present here. Mrs. McCartney, apparently because of advice given to her by a lawyer she consulted, declined to permit inspection of the inside of the house.

Inadequacy of price, coupled with irregularities and improprieties in the sale, caused the Court of Appeals in *Nesbitt v. Dallam*, 7 Gill & Johnson 494 (1836) to set aside a sheriff's sale of real estate. The statute then in effect required that the advertisement of sale be set up at the courthouse door of the county, and other public places in the county, where such sale may be made. The property levied upon was three separate lots in the town of Port Deposit. The advertisement was set up at no public places in the county, except the courthouse, post office, and two taverns in Elkton, 18 miles from Port Deposit. The sale was held at Elkton.

Regarding the advertisement in that case the Court of Appeals said that it was a circumstance that would have great weight in inclining the court to set aside a sale, where the property had been sold greatly below its value. The Court said, at 511:

> "It is the duty of the sheriff in making a judicial sale, to endeavour to obtain the best price in his power for the property to be sold; and in the exercise of a sound judgment and discretion upon the subject, he should cause advertisements to be set up at such public places

3. See, however, Code, Real Property Art., § 14-103 (a).

> in the county, as he may reasonably believe would be conducive to that end; amongst which, in the present case, in the absence of all proof to the contrary, would be public places in the town of Port Deposit, and its vicinity."

The three lots were sold in mass, on the execution of a judgment of $150.00 which had first priority, but was followed by a mortgage and other judgment liens amounting to between $4,000.00 and $5,000.00. The property was proved to have been worth $5,800.00. It was sold for $1,100.00.

The Court said, at 512:

> "Such a disparity between the price and value of the property sold, furnishes intrinsic evidence of the irregularity, impropriety, or unfairness of the sale; and connected with any of the several omissions of duty, or indiscretions of the sheriff before referred to, leaves not to the court a shadow of discretion as to vacating this sale."

The Court then discussed what it called the "gross misconduct of the sheriff" in selling the entire property in mass, which it said was "manifestly a fraud on the rights of the mortgagee".

The present statute requiring the sheriff to give notice of the sale calls for no exercise of sound judgment and discretion. Both the minimum and the maximum are that the notice be posted at the courthouse door, and printed in a newspaper published in the county. Anything less is fatal to the sale; anything more is surplusage.

An allegation that a sheriff's sale brought a grossly inadequate price was considered by the Court of Appeals in *Preissman v. Crockett,* 194 Md. 51, 69 A. 2d 797 (1949). The Court disposed of issues concerning the levy, and the sheriff's return, neither of which is involved here, and of the contention of the judgment debtors that they had a right to select the paper in which the advertisement of sale was published. The property in that case was sold by the sheriff for $1,050.00, subject to a lien of $664.37, which would total

$1,714.37. There was inconclusive evidence which indicated a value of about $4,000.00. The Court noted prior holdings "that mere inadequacy of price standing alone was insufficient to set aside a judicial sale", and stated, at 60:

> "We do not think that the price which the property in question brought at the sale was grossly inadequate; and the conduct of the sale by the sheriff cannot be questioned for want of fairness, good faith, and the exercise of reasonable discretion."

Clearly it is the law that if the inadequacy of price in this case stood alone, that inadequacy would not invalidate the sale. We shall, however, consider later in this opinion whether the inadequacy resulted from any irregularity, omission of duty, or impropriety by the sheriff, or unfairness in the sale.

### The Sale Was Made For Cash

The facts relating to this question were brought out partly at the first hearing and partly at the second. Judge Maguire's findings, supported by the evidence, were that when the property was sold to him Dr. Frost tendered to the sheriff a treasurer's check on the Equitable Trust Bank, payable to Dr. Rex A. Frost, in the amount of $19,969.10. He asked the sheriff for change. The sheriff was unable to give change, but kept possession of the check and went with Dr. Frost to a nearby branch of Equitable Trust Bank, where payment in the correct amount of $2,000.00 was made by another treasurer's check.

In arguing that this method of payment was a departure from the advertised terms of sale, and an irregularity, appellant relies upon the opinion of the Court of Appeals in *Buckeye v. Brown & Shilling*, 243 Md. 224, 220 A. 2d 922 (1966). In that case, one of the few involving a sheriff's sale ever to reach it, the Court reversed a circuit court order denying a judgment debtor's petition to quash a sale on execution levied upon an interest in real estate.

The case presented a series of events which the Court of Appeals characterized as "almost farcical". The first successful bidder, president and owner of the corporate judgment debtor, had no cash or reasonable substitute. The bidding began again. The next successful bidder had neither cash nor certified check, but said that he had a bankbook in his office, 1½ miles away. The bidder, the auctioneer, the sheriff, and the creditor's attorney left the court house and went to the office. The bidder displayed a savings passbook showing funds on deposit sufficient to cover the price. After he had made a few telephone calls, the bidder said that he would not go through with the sale unless he got a guaranteed title. The sheriff's response to that condition was negative. The gathering broke up. A day or two later, holding an assignment from the second "successful" bidder, a corporation of which an earlier unsuccessful bidder was president, paid to the sheriff, who accepted it, the amount of the high bid, and about a week later received a deed from the sheriff. In *Buckeye* the Court said, at 230-31:

"When the published terms of sale provide, as in the case at bar, for a sale 'to the highest bidder for cash' the sheriff may not vary the terms of sale by accepting anything else. The term 'cash', as used here, excludes checks, drafts and negotiable instruments in any other form. It means United States currency. Certified checks, bank drafts and cashier's checks may, in appropriate circumstances, constitute an exception when drawn upon or issued by banks the existence and solvency of which are well known to the sheriff. (Citations omitted)

"The very concept of a sale 'for cash' connotes and requires an immediacy of payment which is conspicuously absent in the case before us."

We hold that the payment of cash as Dr. Frost paid it in this case met the requirement of immediate payment. We see no irregularity in the transaction, and there is no suggestion of impropriety or unfairness.

## Other Procedural Irregularities

In addition to the sheriff's temporary acceptance of an unendorsed treasurer's check in lieu of cash, appellant suggests in argument several other irregularities.

She says that The Jeffersonian, published in Towson, has no circulation in Dundalk, and the sheriff's duty to obtain the best price for the property required him to publish the notice in some other paper. By a letter sent on 10 March 1976 addressed to both judgment debtors the Chief Deputy Sheriff advised that sale of the property had been ordered, and "you have the right to name the newspaper in which it is to be advertised." Mrs. McCartney received the letter, and did nothing. In both *Preissman, supra,* 194 Md. at 58-59, and *Buckeye, supra,* 243 Md. at 232-33, the failure to assert the right to name the paper was held to be a waiver of the right. The right was waived here.

Regarding the duties of a sheriff in the sale of real property the Court of Appeals said in *Buckeye, supra,* at 229-30:

> "While the only reason for a sale by the sheriff under the writ of *fieri facias* is to accomplish a satisfaction of the judgment, the sale should be so conducted as to promote competition and to secure the best price. Judge Raine (the trial judge) felt 'the sheriff is entrusted with a certain amount of discretion' in conducting execution sales and it must be conceded that this is generally true. Nevertheless, whatever may be the limits of that 'certain amount of discretion' it must be fairly and impartially exercised for the benefit of all concerned. Ordinarily the sheriff may follow the reasonable directions of the judgment creditor but he should be at all times aware that he is not merely the servant of the creditor and that the debtor may have interests which he has a duty to protect. Indeed, in some circumstances, the bidders at the sale may be drawn within the purlieus of his duty to be fair and impartial."

After having detailed the unbroken series of irregularities in *Buckeye* (in which inadequacy of price was not an issue) the Court commented, at 232:

> "* * * we do not think execution sales should be conducted in such a casual, haphazard manner and the only way to make our disapproval effective is to set the sale aside. To do otherwise, we think, would be tantamount to providing every sheriff with access to a modern Pandora's box."

Appellant suggests that pursuant to the sheriff's duty to obtain the best price for the property he should have posted a copy of the advertisement of sale in the vicinity of the property; that he should have posted directional signs or arrows on busy nearby streets showing the way to the site of the property; that he should have ascertained for himself the value of the property being sold; and that he should have consulted with the judgment creditor or the judgment debtors regarding the terms of sale.

In a sale such as this, it is the sheriff's duty to follow the procedures established by law, and to conduct the sale in conformity with his advertisement. He has no duty to do more. To the extent that he has discretion, it concerns *how*, but not *whether*, to follow the required procedures. In addition, he has a duty to refrain from any conduct which may discourage competition in the bidding, or may otherwise be unfair to creditor, debtor, or prospective purchaser.

It should be understood, despite their similarity in some respects, that a sheriff's sale on execution of process issued by a law court is not the same as a sale made by a trustee under the supervision of a court of equity. A sheriff must do what the law requires him to do. The range within which he may exercise judgment or discretion is very limited. He bears no fiduciary relation to any of the parties. His sale, lawfully made, is not conditional, but absolute. He does not report his sale to any court. His action is not and need not be ratified or approved by a court. Payment of the purchase price is immediate, and execution and delivery of the sheriff's deed may be immediate.

Even when a sheriff's sale is subjected to judicial review, as it was in this case, that review takes place in a law court, where the complaining party must show that the sale was not made according to law, and was defective.

In her brief here appellant says that the sale commenced later than the advertised time of 11:00 o'clock. That issue was not raised or decided below, and even if she is correct, any harm was speculative at most. We do not consider it. Maryland Rule 1085.

We hold that there was no breach of duty by the sheriff in the sale of the property in this case. The inadequate price, standing alone, did not invalidate the sale.

> *Motion to dismiss appeal denied.*
> *Orders affirmed.*
> *Appellant to pay costs.*